Nikki ZINGER *v.* Jan TERRELL, Individually and as
Administratrix of the Estate of Linda Sue Holley, Deceased

98-998 985 S.W.2d 737

Supreme Court of Arkansas
Opinion delivered February 18, 1999

*Ben Seay,* for appellant.

*Keith, Clegg, & Epley,* by: *Michael G. Epley,* for appellee.

ROBERT L. BROWN, Justice. This appeal is from a grant of summary judgment in favor of appellee Jan Terrell individually and as administratrix of the estate of Linda Sue Holley, deceased. The issue before us is whether appellant Nikki Zinger's judgment of conviction for the first-degree murder of her mother, Linda Sue Holley, precludes her claim to the life insurance proceeds on her mother's life. The trial court found that it did and entered summary judgment accordingly. We agree with the chancery court and affirm.

On March 8, 1991, Linda Sue Holley died as a result of stab wounds and several blows to the head. Law enforcement investi-

gators determined that a burglary was staged after Holley was murdered, and they arrested the victim's daughter, Zinger, and her boyfriend, Daniel Risher, for the crime. The prosecutor's theory of the case was that the two defendants had killed Holley to collect the proceeds of her life insurance policies. On January 13, 1992, Zinger and Risher were convicted of first-degree murder, and Zinger was sentenced to life imprisonment. We affirmed the conviction and sentence on direct appeal. *See Zinger v. State*, 313 Ark. 70, 852 S.W.2d 320 (1993). Zinger next filed a postconviction petition for Rule 37 relief. That was denied by the circuit court, and we affirmed.

Holley had two life insurance policies in effect at the time of her death. One was with State Farm Life Insurance Company, and a second was with Boston Mutual Life Insurance Company. On November 15, 1991, State Farm filed a complaint in inter- pleader in chancery court regarding the insurance proceeds on Holley's life and alleged that under its policy Zinger was the pri- mary beneficiary and Terrell was the successor beneficiary. The State Farm life insurance proceeds were deposited into the registry of the court pursuant to court order. Named as party defendants in the interpleader lawsuit were Zinger, Terrell, and the personal representative of the Holley Estate. The initial defendant and administrator of the Holley estate was Gary Oller, who died dur- ing the pendency of the proceedings. Terrell was appointed as successor administratrix on March 13, 1996. Boston Mutual also moved to intervene in the interpleader suit, and the chancery court granted the motion and allowed the insurance company to interplead its insurance proceeds. Under the Boston Mutual pol- icy, Zinger was the only beneficiary named.

On March 13, 1996, Terrell moved for summary judgment based on the fact that Zinger had been convicted of murdering her mother and, accordingly, should not be a beneficiary of her mother's life insurance policies. Terrell prayed instead that the court disburse the proceeds to her individually as the alternative beneficiary in the case of State Farm's policy and to her as admin- istratrix of the Holley Estate for the Boston Mutual policy. The chancery court granted the motion and found that Zinger, by vir- tue of her murder conviction, was precluded from receiving any

life insurance proceeds arising from Holley's death. That summary-judgment order was subsequently set aside in order to comply with Ark. R. Civ. P. 17(c), which requires appointment of counsel for prisoners in the penitentiary, if the prisoner has no counsel. An attorney was appointed for Zinger, and a response to Terrell's motion for summary judgment was filed on her behalf. Attached to the response was Zinger's affidavit in which she denied murdering her mother.

On February 11, 1998, the chancery court issued a letter opinion granting Terrell's motion for summary judgment. In that letter opinion, the chancery court concluded:

> Nikki Sue Zinger is collaterally estopped from asserting any interest in her mother's estate as a result of her conviction for the first-degree murder of her mother. The judgment and conviction of the Circuit Court of Columbia County, as affirmed by the Arkansas Supreme Court, precludes her from re-litigating her guilt in the intentional death of her mother, and as a result thereof, her taking in the estate of her mother or from any insurance policies insuring the life of her mother.

Zinger now appeals and claims that the chancery court erred because its order is in direct conflict with the common law of Arkansas. Zinger is correct that the chancery court's decision is contrary to our common law. In cases dating back to 1936, this court has held that a judgment in a criminal prosecution is neither a bar to a subsequent civil proceeding founded on the same facts nor proof of anything except its rendition. *See, e.g., Smith v. Dean*, 226 Ark. 438, 290 S.W.2d 439 (1956); *Horn v. Cole*, 203 Ark. 361, 156 S.W.2d 787 (1941); *Washington Nat'l Ins. Co. v. Clement*, 192 Ark. 371, 91 S.W.2d 265 (1936). The issue then is whether our common law is outmoded and should be overruled.

We turn first to *Washington Nat'l Ins. Co. v. Clement, supra*. In that case, an insurance company denied disability benefits to Clement (its insured) because Clement had been driving his car while intoxicated in violation of state law. During the ensuing trial where Clement sued for disability benefits, the insurance company proved that he was convicted of driving while intoxicated. Because of this, the company sought a directed verdict. The trial court denied the motion and sent the case to the jury.

The jury found for Clement. We affirmed the trial court's decision not to grant a directed verdict to the insurance company, and in doing so, we cited *Corpus Juris*:

> By the great weight of authority, and in the absence of any statute to the contrary, a judgment or sentence in a criminal prosecution is neither a bar to a subsequent civil proceeding founded on the same facts, nor is it proof of anything in such civil proceeding, except the mere fact of its rendition.

*Clement*, 192 Ark. at 373, 91 S.W.2d at 266 (*citing* 34 C.J. 970, § 1387).

Our next case in this line of cases dealt with an insurance beneficiary (the widow) who was tried and acquitted of murdering the insured (her husband). *See Horn v. Cole, supra.* In *Horn*, the widow sought to use this earlier acquittal to establish lack of wrongdoing in her subsequent civil proceeding to collect his life insurance proceeds. The chancery court ruled that it was not bound by the criminal judgment and that it had the right to determine in a separate civil action whether the beneficiary was guilty or innocent of murdering her husband. The court concluded that the widow had indeed engaged in wrongdoing and had caused her husband's death. We affirmed, and repeated the common law in Arkansas: "Neither a conviction nor an acquittal of the appellant in the criminal case would have been binding upon the court in the trial of the issues here involved." *Horn*, 203 Ark. at 367, 156 S.W.2d at 790.

Finally, in *Smith v. Dean, supra,* a widow was convicted of murdering her former husband. She petitioned in probate court to be awarded land as the surviving tenant by the entirety and also statutory allowances. The administrator for her husband's estate introduced a certified copy of the criminal judgment of conviction, but the probate court ruled that that judgment was not determinative of wrongdoing in the civil matter. We agreed and relied on our prior caselaw that a criminal judgment is not admissible to prove the facts on which it was based. We noted that the soundness of this rule was not universally conceded and that Dean Wigmore in his treatise, WIGMORE ON EVIDENCE, had argued

that the rule should be relaxed in exceptional circumstances. We concluded by saying:

> Since we are not convinced that our own precedents are demonstrably wrong we think it best to preserve certainty in the law by declining to overrule our earlier decisions.

*Dean,* 226 Ark. at 440, 290 S.W.2d at 440–41. We have not had occasion to reexamine our common law since the *Dean* decision in 1956.

We have no doubt that the point of view as expressed in these cases no longer prevails and that today in the vast majority of jurisdictions a judgment of criminal conviction may preclude a defendant from retrying the same issue of his or her culpability in a subsequent civil complaint. Hence, a criminal conviction now acts as a bar and collaterally estops the retrial of issues in a later civil trial that were actually litigated in the criminal trial. *See, e.g., Kennedy v. Mendoza-Martinez,* 372 U.S. 144 (1963); *In re Marquardt,* 778 P.2d 241 (Ariz. 1989); *Teitelbaum Furs, Inc. v. Dominion Ins. Co.,* 375 P.2d 439 (Calif. 1962); *People v. Tucker,* 837 P.2d 1225 (Colo. 1992); *Warmouth v. Delaware State Bd. of Examiners in Optometry,* 514 A.2d 1119 (Del. Super. Ct. 1985); *Tradewind Ins. Co. v. Stout,* 938 P.2d 1196 (Haw. Ct. App. 1997); *Rockford Mut. Ins. Co. v. Shattuck,* 544 N.E.2d 843 (Ill. Ct. App. 1989); *Ideal Mut. Ins. Co. v. Winker,* 319 N.W.2d 289 (Iowa 1982) (guilty plea); *Aetna Cas. & Surety Co. v. Niziolek,* 481 N.E.2d 1356 (Mass. 1985); *Jordan v. McKenna,* 573 So.2d 1371 (Miss. 1990); *Johnson v. Schmidt,* 719 S.W.2d 825 (Mo. Ct. App. 1986); *Aetna Life & Cas. Ins. Co. v. Johnson,* 673 P.2d 1277 (Mont. 1984); *Aubert v. Aubert,* 529 A.2d 909 (N.H. 1987); *In re Coruzzi,* 472 A.2d 546 (N.J. 1984); *Broer v. Smith,* 658 N.Y.S.2d 447 (N.Y. 1997) (guilty plea); *Lee v. Knight,* 771 P.2d 1003 (Okla. 1989); *McFadgon v. Memphis,* 731 S.W.2d 530 (Tenn. Ct. App. 1986); *McCormick v. Texas Commerce Bank Nat'l Ass'n,* 751 S.W.2d 887 (Tex. Ct. App. 1988); *Rice v. Janovich,* 742 P.2d 1230 (Wash. 1987); *see also* 47 Am. Jur.2d § 733 (1995). This shift in attitude is also evidenced in the RESTATEMENT OF LAW. *See* RESTATEMENT, SECOND, OF JUDGMENTS § 85(2)(a).

We have no doubt that one of the principal reasons for this change in the majority view is that the potential for an erroneous judgment in a criminal proceeding has been dramatically reduced by the full panoply of rights afforded to criminal defendants in the past forty years. *See, e.g.,* Ark. R. Crim. P. 37 (postconviction relief); *Mapp v. Ohio,* 367 U.S. 643 (1961) (the exclusionary rule); *Miranda v. Arizona,* 384 U.S. 436 (1966) (mandatory that an accused be informed of constitutional rights prior to custodial interrogation); *Brady v. Maryland,* 373 U.S. 83 (1963) (requiring disclosure of material evidence by the prosecutor); *Griffin v. California,* 380 U.S. 609 (1965) (prohibiting the prosecution from commenting on the accused's silence); *Gerstein v. Pugh,* 420 U.S. 103 (1975) (prompt determination of probable cause after an arrest); *Illinois v. Gates,* 462 U.S. 213 (1983) (standards for search warrants). The California Supreme Court emphasized this point in 1963 when it explained the basis for its departure from the traditional rule:

> To preclude a civil litigant from relitigating an issue previously found against him in a criminal prosecution is less severe than to preclude him from relitigating such an issue in successive civil trials, for there are rigorous safeguards against unjust conviction, including the requirements of proof beyond a reasonable doubt and of a unanimous verdict, the right to counsel, and a record paid for by the state on appeal. Stability of judgments and expeditious trials are served and no injustice done, when criminal defendants are estopped from relitigating issues determined in conformity with these safeguards.

*Teitelbaum Furs, Inc.,* 375 P.2d at 441 (citations omitted).

We are convinced that the time has come to overrule our caselaw and join the prevailing view that a prior criminal conviction for murder acts as a bar to relitigating the same issue for the same defendant in civil court. The doctrine of collateral estoppel or issue preclusion bars the relitigation of issues of law or fact actually litigated by the parties in the first suit, provided that the party against whom the earlier decision is being asserted has a full and fair opportunity to litigate the issue in question and that issue is essential to the judgment. *See Huffman v. Alderson,* 335 Ark. 411,

983 S.W.2d 899 (1998). The following elements must be shown in order to establish collateral estoppel: (1) the issue sought to be precluded must be the same as that involved in the prior litigation; (2) the issue must have been actually litigated; (3) the issue must have been determined by a final and valid judgment; and (4) the issue must have been essential to the judgment. *See Miller County v. Opportunities, Inc.* 334 Ark. 88, 971 S.W.2d 781 (1998) (citing *Hill v. State*, 331 Ark. 312, 962 S.W.2d 762 (1998)). We hold that a defendant who has been adjudged guilty of murdering a person is collaterally estopped from relitigating that same issue in a later civil proceeding to inherit or take the victim's property.

 We do not overrule our common law cavalierly or without giving considerable thought to this change. Zinger appropriately raises the doctrine of *stare decisis*, and we certainly concur that this court historically has been reluctant to overturn precedent. Indeed, we have recently said that precedent governs until it gives a result so patently wrong, so manifestly unjust, that a break becomes unavoidable. *See McGhee v. State*, 334 Ark. 543, 975 S.W.2d 834 (1998) (*citing Parish v. Pitts*, 244 Ark. 1239, 1252, 429 S.W.2d 45, 52 (1968)). We also said in *Sanders v. County of Sebastian*, 324 Ark. 433, 922 S.W.2d 334 (1996):

> While we do have the power to overrule a previous decision, it is necessary, as a matter of public policy, to uphold prior decisions unless a great injury or injustice would result. The United States Supreme Court has recognized that adherence to precedent promotes stability, predictability, and respect for judicial authority. (Citations omitted.)

*Id.* at 435-436, 922 S.W.2d at 335.

 On the other hand, we have said that precedent "should not implicitly govern, but discreetly guide." *Parish v. Pitts*, 244 Ark. at 1252, 429 S.W.2d at 52 (*quoting Roane v. Hinton*, 6 Ark. 525, 527 (1846)). The Supreme Court of the United States has stated its position along the same lines: "Nevertheless, when governing decisions are unworkable or are badly reasoned, this Court has never felt constrained to follow precedent. *Stare decisis* is not an inexorable command; rather, it is a principle of

policy and not a mechanical formula of adherence to the latest decision." *Payne v. Tennessee*, 501 U.S. 808, 828-29 (1991) (internal citations omitted). As this court stated recently, one of the reasons to change the common law is when it becomes outmoded and unjust, out of joint with the times and no longer reflective of the economic and social needs of society. *See Shannon v. Wilson*, 329 Ark. 143, 947 S.W.2d 349 (1997). We are convinced that that has become the situation in the case at hand.

■ We, accordingly, overrule *Smith v. Dean*, 226 Ark. 438, 290 S.W.2d 439 (1956), with regard to its holding that a prior criminal conviction for murder does not preclude relitigating the same issue of culpability against the same defendant in a later civil proceeding. We further hold that the *dictum* in *Horn v. Cole*, 203 Ark. 361, 156 S.W.2d 787 (1941), to that same effect is no longer the common law in Arkansas.

■ We leave intact, however, the holding in *Horn v. Cole, supra*, that an *acquittal* in a criminal trial for murder does not act as a bar to a subsequent trial in a civil proceeding relating to that defendant's culpability. The reason is simple. A criminal acquittal for murder where the proof does not convince a jury beyond a reasonable doubt should not prohibit a civil trial where proof of wrongdoing may well be proved by a preponderance of the evidence. Because we are not called upon in the instant case to address the issue of collateral estoppel for criminal convictions other than murder, we do not overrule *Washington Nat'l Ins. Co. v. Clement*, 192 Ark. 371, 91 S.W.2d 265 (1936).

Affirmed.