Scipio JOHNSON and Bessie Johnson *v.*
UNION PACIFIC RAILROAD; Bonds Fertilizer, Inc.;
and Bonds Brothers, Inc.

02-602 104 S.W.3d 745

Supreme Court of Arkansas
Opinion delivered April 17, 2003

[Petition for rehearing denied May 15, 2003.]

*Parker Law Firm, Ltd.* by: *Tim S. Parker,* for appellants.

*William H. Sutton, Scott Tucker* and *Joseph P. McKay,* for appellee Union Pacific Railroad Company.

*Barber, McCaskill, Jones & Hale, P.A.,* by: *John S. Cherry, Jr.* and *D. Keith Fortner,* for appellees Bonds Fertilizer, Inc. and Bonds Brothers, Inc.

DONALD L. CORBIN, Justice. This case arises from an accident in which a train collided with a truck near Tamo, Arkansas, on June 28, 1995. Appellant Scipio Johnson was a passenger in the truck and was seriously injured when he was thrown from the vehicle upon impact. He and his wife, Bessie Johnson, filed suit in the Jefferson County Circuit Court against Appellees Union Pacific Railroad, Bonds Fertilizer, Inc., and Bonds Brothers, Inc., alleging negligence and a loss of consortium. The trial court granted summary judgment to Bonds Fertilizer and Bond Brothers.[1] The trial court granted partial summary judgment to Union Pacific, on the issue of inadequate warning devices. Following a jury trial against the railroad on the remaining issue of negligence, the jury returned a verdict in favor of Union Pacific. For reversal, Appellants argue that the trial court erred by (1) finding that the claim against Bonds Fertilizer was barred based on the exclusive-remedy of the Workers' Compensation Act; and (2) refusing to find that Union Pacific was collaterally estopped from raising the defense of federal preemption on the claim of inadequate warning devices. The latter point is one of first impression, while the former raises a significant issue needing further development or clarification of the law. Our jurisdiction is thus pursuant to Ark. Sup.

---

[1] Bonds Brothers is not a party to this appeal.

Ct. R. 1-2(b)(1) and (5). We reverse and remand on the first point and affirm on the second point.

## I. Summary Judgment to Bonds Fertilizer

For his first point on appeal, Johnson[2] argues that the trial court erred in granting summary judgment to Bonds Fertilizer, based on the finding that it was Johnson's employer at the time of the accident and had paid workers' compensation benefits to him. Johnson contends that on the date of the accident, he was working for Bonds Brothers Partnership Trust ("the Farm"), not for Bonds Fertilizer. He admits, however, that he was employed by both entities. He maintains that despite his concurrent employment, he was performing work exclusively for the Farm at the time of the accident and immediately prior to the accident. Thus, he contends that he may proceed in circuit court against Bonds Fertilizer.

The record reflects that, on the date of the accident, Johnson was an employee of both the Farm and Bonds Fertilizer. Both companies, along with Bonds Brothers, were either owned or controlled by Kenny Bonds and Brian Bonds. Kenny and Brian each owned fifty percent of Bonds Brothers. Bonds Brothers is the sole shareholder of Bonds Fertilizer. The Farm is a partnership comprised of Kenny Bonds Farms, Brian A. Bonds Trust, and Bonds Brothers. When Johnson performed work for either the Farm or Bonds Fertilizer, he reported to the same supervisor, Allan Maxey. Some weeks, Johnson would perform tasks for both employers, but he would receive only one paycheck, from the company that he did the most work for that week. The week before the accident and the week of the accident, Johnson was paid by Bonds Fertilizer.

On the morning of the accident, Johnson was performing work for the Farm, because one of the Farm's employees was out sick. That afternoon, Johnson was supposed to deliver a load of fertilizer that was coming in at 3:00 p.m. for Bonds Fertilizer. In the meantime, around 1:00 p.m., Maxey instructed Johnson to pick up a tractor for the Farm and begin laying irrigation pipe. Maxey instructed Johnson to ride with Frances Birmingham, an

---

[2] For clarity and ease of writing, we hereafter refer to Appellants collectively as "Johnson."

employee of Bonds Fertilizer. Alyston Luster, an employee of the Farm, also rode with them. The truck they were riding in was owned by Bonds Brothers, and it had a 1,000-gallon water tank hooked to the back.

When they approached the railroad crossing at Clemmons Road, Birmingham applied the brakes and slowed the truck to one or two miles per hour. She did not come to a complete stop. According to their depositions, both Birmingham and Johnson looked both ways to see if a train was coming. Neither of them saw or heard a train. Birmingham then began driving the truck across the track, when Johnson hollered for her to "step on it." The train collided with the bed of the truck, throwing all three passengers from the vehicle. Johnson and Birmingham received serious injuries from the collision, but Luster's injuries were fatal.

Following the accident, Kenny Bonds reported Johnson's accident to the insurance carrier for Bonds Fertilizer. The insurance carrier approved the claim and paid approximately $61,000 in medical and temporary total disability benefits to or on behalf of Johnson. Johnson accepted these benefits for over nine months, from July 1995 to April 1996. Subsequently, in February 1998, Johnson made a claim for additional benefits, listing as his employer: "Bonds Fertilizer, Inc. or Bonds Brothers Farms, Inc." That claim was later withdrawn by Johnson, in favor of the civil suit.

Based on these facts, the trial court granted summary judgment to Bonds Fertilizer. The trial court found that Bonds Fertilizer was Johnson's employer at the time of the accident. The trial court also found that because Johnson had received workers' compensation benefits and had made no attempt to repay those benefits, his exclusive remedy against the company was under the Workers' Compensation Act.

Johnson urges us to reverse the grant of summary judgment. However, before we may reach the merits of his argument, we must first address the argument made by Bonds Fertilizer that the trial court lacked jurisdiction to determine which employer Johnson was working for at the time of the accident. Bonds argues that the exclusive jurisdiction to determine this issue belongs to the Arkansas Workers' Compensation Commission. We agree.

In *VanWagoner v. Beverly Enters.*, 334 Ark. 12, 13, 970 S.W.2d 810, 811 (1998), this court held that "the commission has exclusive, original jurisdiction to determine the fact issues establishing its jurisdiction." There, the appellant had filed suit against her employer in circuit court. On motion of her employer, the circuit court dismissed with prejudice the tort action on the ground that it was barred by the exclusive-remedy provision of the Act. The appeal was certified to us from the Arkansas Court of Appeals, to decide whether the Commission or the circuit court should determine the applicability of the Workers' Compensation Act. This court held that such determination belonged exclusively to the Commission:

> *We believe that the better rule is* to recognize the administrative law rule of primary jurisdiction and *to allow the Workers' Compensation Commission to decide whether an employee's injuries are covered by the Workers' Compensation Act.*
>
> . . . .
>
> *We hold* that the exclusive remedy of an employee or her representative on account of injury or death arising out of and in the course of her employment is a claim for compensation under § 11-9-105, and *that the commission has exclusive, original jurisdiction to determine the facts that establish jurisdiction, unless the facts are so one-sided that the issue is no longer one of fact but one of law, such as an intentional tort. See Angle v. Alexander*, 328 Ark. 714, 719, 945 S.W.2d 933 (1997) (citing *Miller v. Ensco, Inc.*, 286 Ark. 458, 461, 692 S.W.2d 615 (1985) (explaining that, before an employee is free to bring a tort action for damages against an employer, the facts must show that the employer had a "desire" to bring about the consequences of the acts, or that the acts were premeditated with the specific intent to injure the employee). In so holding, we overrule all prior decisions to the extent that they are inconsistent with this opinion.

*Id.* at 15-16, 970 S.W.2d at 812 (emphasis added). In adopting this rule, this court pointed out that the Commission has vast expertise in this area, and that the goals of uniformity, speed, and simplicity would best be achieved by granting the Commission the exclusive, original jurisdiction to determine the applicability of the Act.

Two years later, in *WENCO Franchise Mngm't, Inc. v. Chamness*, 341 Ark. 86, 13 S.W.3d 903 (2000) (*per curiam*), this court reiterated the holding in *VanWagoner*. There, the appellee injured her back when she slipped and fell at the Wendy's restaurant

where she worked. Her injury was accepted as compensable, and she received benefits. When she later sought additional benefits, her employer responded by arguing that she was not performing employment services at the time of her accident. A hearing was scheduled before the Workers' Compensation Commission, but was later canceled by the appellee. Thereafter, the appellee filed a negligence suit against her employer in circuit court. The employer filed a motion for summary judgment on the ground that the appellee's exclusive remedy was under the Act and that only the Commission had the authority to determine jurisdiction in the matter. The circuit court denied summary judgment, and the employer petitioned for a writ of prohibition. This court granted the writ based on the holding in *Van Wagoner* and held:

> In the present case, there is no dispute that Chamness was employed by WENCO at the time of the injury or that the injury occurred on WENCO's premises. Nor is it disputed that Chamness has already received workers' compensation benefits for her injury. Furthermore, it is not alleged by Chamness that her injury resulted from an intentional tort by WENCO. Accordingly, the Commission has exclusive authority to determine the facts that establish jurisdiction in this matter.

*Id.* at 88, 13 S.W.3d at 904.

Here, it is not disputed that Johnson's injuries occurred while he was performing employment services. The only issue is whether he was performing those services for Bonds Fertilizer or for the Farm. All of the evidence submitted below demonstrates that Johnson was employed by both the fertilizer company and the farm, and that he would receive a pay check from the employer that he performed the most work for during the week. The week before the accident, Johnson was paid by the fertilizer company. Likewise, the week of the accident, he was paid by the fertilizer company. The evidence also showed that Johnson's supervisor was the same, regardless of whether he was working for the fertilizer company or the farm.

On the morning of the accident, Johnson had been operating a tractor for the farm. He was filling in for a farm employee who was out sick. When he returned from lunch, his supervisor told him that he would not have a fertilizer shipment to deliver until 3:00 p.m. Johnson was then instructed to go with Birmingham to

pick up a tractor at one of the farming locations and begin laying irrigation pipe for the farm. Johnson was on his way to pick up the tractor when the accident occurred.

Johnson received workers' compensation benefits from Bonds Fertilizer's insurance carrier. The benefits were paid over a period of nine months following the accident. Thereafter, Johnson sought additional benefits from the Commission. In his application for those additional benefits, Johnson listed Bonds Fertilizer or the Farm as his employer.

■ ■ Viewing these facts under the holdings in *Van Wagoner* and *Chamness*, we conclude that the Commission had the exclusive, original jurisdiction to determine whether Johnson's injuries were covered by the Act. The evidence adduced below is not so one-sided to demonstrate, as a matter of law, which employer Johnson was working for at the time of the accident. Thus, it is an issue of fact for the Commission to resolve. Accordingly, we reverse the trial court's grant of summary judgment to Bonds Fertilizer, as the trial court lacked jurisdiction to determine the applicability of the Act to Johnson's claim. We thus remand this matter to the trial court with leave for Johnson to pursue a determination before the Commission.[3]

## II. Partial Summary Judgment to Union Pacific

For his second point on appeal, Johnson argues that the trial court erred in granting partial summary judgment to Union Pacific on the issue of inadequate warning devices. In the complaint, Johnson alleged that the railroad crossing where the accident occurred did not have adequate warning devices. It was undisputed that the crossing was only equipped with passive warning devices in the form of "crossbucks." There were no flashing lights or gates at this crossing. Union Pacific sought summary judgment on this claim, on the ground that the crossbucks were installed with federal funds according to procedures set out in federal law. Union Pacific asserted that federal law had removed the

---

[3] Our holding that the trial court lacked jurisdiction to determine the applicability of the Workers' Compensation Act to Johnson's claim against Bonds Fertilizer does not affect the trial court's, and consequently this court's, jurisdiction to determine Johnson's separate claims against Union Pacific, as those claims are not covered under the Act.

decision-making authority from the railroad and placed it in the hands of the state and federal government, and that, therefore, the railroad could not be held liable based on the alleged inadequacy of the warning devices.

In response, Johnson asserted that the federal-preemption defense was barred under the doctrine of collateral estoppel, because Union Pacific had unsuccessfully litigated this issue in the prior suit brought by Frances Birmingham in the federal district court. Johnson argued that the federal court's ruling precluded Union Pacific from raising the issue in state court, as the previous ruling was based on the same accident and the same crossing devices.

The trial court disagreed with Johnson's theory and granted partial summary judgment to Union Pacific. The trial court found that collateral estoppel did not apply, because the previous determination in federal court was not essential to the judgment in that case. The trial court explained that the jury in that prior case was presented with all the evidence, including that regarding the adequacy of the warning devices, and still found that Union Pacific was not negligent. The trial court also found that Johnson was attempting to use collateral estoppel offensively without mutuality of the parties. For the reasons set out below, we affirm.

■ ■ Collateral estoppel, also known as issue preclusion, bars relitigation of issues of law or fact previously litigated by a party. *Palmer v. Arkansas Council on Econ. Educ.*, 344 Ark. 461, 40 S.W.3d 784 (2001); *Zinger v. Terrell*, 336 Ark. 423, 985 S.W.2d 737 (1999). The elements of collateral estoppel are: (1) the issue sought to be precluded must be the same as that involved in the prior litigation; (2) the issue must have been actually litigated; (3) it must have been determined by a valid and final judgment; and (4) the determination must have been essential to the judgment. *Id.* The doctrine is applicable to preclude relitigation of issues in state court that were previously litigated in federal court. *Palmer*, 344 Ark. 461, 40 S.W.3d 784. Unlike *res judicata*, or claim preclusion, collateral estoppel does not require mutuality of parties before the doctrine is applicable. *Fisher v. Jones*, 311 Ark. 450, 844 S.W.2d 954 (1993).

Ordinarily, collateral estoppel is relied upon by a defendant to preclude a plaintiff from relitigating an issue that has previously

been decided adversely to the plaintiff. In the case at bar, however, the doctrine is being relied upon by the plaintiff to preclude a defendant from relitigating a defense. This court has not heretofore specifically approved of the offensive use of collateral estoppel to prevent a defendant from relitigating an issue.[4] Thus, this case is one of first impression in Arkansas.

In *Fisher*, 311 Ark. 450, 456, 844 S.W.2d 954, 958, this court determined that the concept of mutuality of parties was not necessary to raise the issue of defensive collateral estoppel. This court distinguished the defensive use of collateral estoppel from its offensive use, observing that the offensive use "is more controversial" than the defensive use of the doctrine. This court noted, however, that the Supreme Court had approved the offensive use of collateral estoppel in *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322 (1979).

In *Parklane Hosiery*, the Court defined offensive collateral estoppel as occurring "when the plaintiff seeks to foreclose the defendant from litigating an issue the defendant has previously litigated unsuccessfully in an action with another party." *Id.* at 326 n.4. The Court concluded that trial courts should be given broad discretion in determining when offensive collateral estoppel applies. This conclusion was based on the Court's determinations that the offensive use of collateral estoppel does not promote judicial economy in the same way that defensive estoppel does, and that its use may be unfair to a defendant. By way of illustration only, the Court observed that the offensive use of collateral estoppel may be unfair (1) where the defendant in the first action is sued for small or nominal damages and thus may not have had great incentive to defend vigorously; (2) where the judgment relied upon as a basis for estoppel is itself inconsistent with one or more previous judgments in favor of the defendant; and (3) where the second action affords the defendant procedural opportunities

---

[4] Contrary to Johnson's argument, this court's holding in *Zinger*, 336 Ark. 423, 985 S.W.2d 737, did not approve of the offensive use of collateral estoppel. Rather, that case merely carved out a narrow exception to the long-standing law that a judgment in a criminal case is neither a bar to a subsequent civil proceeding founded on the same facts nor proof of anything except its rendition. The exception recognized in *Zinger* was that a prior criminal conviction for *murder* acts as a bar to relitigating the same issue for the same defendant in civil court. Beyond that, this court did not address the issue of collateral estoppel for other criminal convictions.

unavailable in the first action that could cause a different result. The Court then held:

> We have concluded that the preferable approach for dealing with these problems in the federal courts is not to preclude the use of offensive collateral estoppel, but to grant trial courts broad discretion to determine when it should be applied. *The general rule should be that in cases where a plaintiff could easily have joined in the earlier action or where, either for the reasons discussed above or for other reasons, the application of offensive estoppel would be unfair to a defendant, a trial judge should not allow the use of offensive collateral estoppel.*

*Id.* at 331 (emphasis added) (footnote omitted).

We agree with the Court's holding that the offensive use of collateral estoppel should be available only in limited cases, and that the trial court should be given broad discretion to determine if it should be applied. We further agree that mutuality of the parties is not necessary to invoke the doctrine, as it is, by its very definition, an attempt by a plaintiff to preclude a defendant from litigating an issue that the defendant has previously litigated unsuccessfully in an action with *another* party.

We hereby adopt the test promulgated by the Court. Using this test, we cannot say that the trial court abused its discretion in denying the use of the doctrine against Union Pacific, in an attempt to preclude it from raising the defense of federal preemption to Johnson's claim of inadequate warning devices. In the first place, Johnson easily could have joined in the first litigation against Union Pacific brought by Birmingham in federal court.[5]

In the second place, we agree that the offensive use of collateral estoppel in this case would be unfair to the defendant. The trial court pointed out in its order that since the federal district court ruled against Union Pacific on the issue of federal preemption, this court issued the opinion of *Union Pac. R.R. Co. v. Sharp*, 330 Ark. 174, 952 S.W.2d 658 (1997), which held that

---

[5] Indeed, the record reflects that Johnson initially filed this suit in federal court, but it was eventually dismissed for lack of diversity jurisdiction when he joined Bonds Fertilizer and Bonds Brothers.

federal funding is the touchstone of preemption in the area of railroad warning devices, because such funding indicates that the warning devices have been deemed adequate by federal regulators. In so holding, this court relied on the Eighth Circuit's holding in *Elrod v. Burlington N. R.R. Co.*, 68 F.3d 241 (1995), which applied the Supreme Court's holding in *CSX Transp., Inc. v. Easterwood*, 507 U.S. 658 (1993). The holding in *Sharp* conflicts with the earlier holding of the federal district court, which rejected the specific holding in *Elrod*. As such, the application of the offensive use of collateral estoppel against this defendant would be unfair.

 Moreover, we are persuaded by Union Pacific's assertion that one of the specific factors provided by the Court in *Parklane Hosiery* is present in this case, namely that Union Pacific did not have the incentive to fully adjudicate the federal's courts ruling. It is undisputed that the Birmingham case was fully submitted to the federal jury, including the allegation that the warning devices were inadequate. It is also undisputed that the jury found that Union Pacific was not liable for Birmingham's injuries. Birmingham appealed to the Eighth Circuit Court of Appeals, and Union Pacific cross-appealed the district court's ruling on the federal-preemption issue. After Birmingham filed her appeal brief, Union Pacific withdrew its cross-appeal. According to Union Pacific, it withdrew its cross-appeal because it was convinced that the appellate court would affirm on direct appeal and would then decline to reach the cross-appeal on the ground of mootness. Thus, Union Pacific no longer had any incentive to pursue the issue on appeal.

 In sum, we reverse the grant of summary judgment to Bonds Fertilizer and remand this matter to the trial court with leave for Johnson to seek a determination from the Commission as to whether he was performing employment services for Bonds Fertilizer or the Farm on the date of the accident. However, we affirm the grant of partial summary judgment to Union Pacific, as we conclude that the trial court did not abuse its discretion in determining that the doctrine of collateral estoppel was not applicable in this case.

Affirmed in part; reversed and remanded in part.