SLIP OPINION

Cite as 2016 Ark. 418

# SUPREME COURT OF ARKANSAS

No. CV-15-595

| | |
|---|---|
| RANDEEP S. MANN AND JOHN DOE #1, JOHN DOE #2, AND JOHN DOE #3 <br> APPELLANTS <br><br> V. <br><br> TRENT P. PIERCE AND MELISSA PIERCE <br><br> APPELLEES | Opinion Delivered: December 1, 2016 <br><br> APPEAL FROM THE CRITTENDEN COUNTY CIRCUIT COURT [CV-2010-61] <br><br> HONORABLE DAVID N. LASER, JUDGE <br><br> AFFIRMED; MOTIONS DENIED. |

**ROBIN F. WYNNE, Associate Justice**

Randeep S. Mann appeals following entry of an order by the Crittenden County Circuit Court granting partial summary judgment in favor of Dr. Trent Pierce and Melissa Pierce as to liability for tort claims the Pierces brought against Mann. A jury subsequently determined that the Pierces had sustained damages in the amount of $122,500,000, and the circuit court entered a judgment in that amount. Mann argues that the circuit court erred in applying the doctrine of offensive collateral estoppel in granting partial summary judgment on liability in favor of the Pierces. Our court of appeals certified this case to us. Thus, our jurisdiction lies pursuant to Rule 1-2(d) of the Rules of the Arkansas Supreme Court and Court of Appeals. We affirm.

On the morning of February 4, 2009, Dr. Trent Pierce, who was then the chairman of the Arkansas State Medical Board (Board), was scheduled to travel from his home in West Memphis to Little Rock to attend a Board meeting. Before getting into his vehicle, Dr. Pierce noticed a spare tire leaning against it. When he moved the tire, an explosive device

(believed to be a grenade) hidden inside the tire exploded, seriously injuring Dr. Pierce. An investigation by the federal Bureau of Alcohol Tobacco and Firearms (ATF) eventually focused on Mann, a physician who had a long disciplinary history with the Board. Mann revealed to ATF investigators that he owned a sizable collection of weapons, at least one of which was observed to be equipped with a grenade launcher. After the bombing, city workers discovered ninety-eight grenades buried approximately 875 feet from Mann's residence.

Mann was indicted and tried on several criminal charges in the United States District Court for the Eastern District of Arkansas in connection with the bombing and the various weapons discovered in or near his home. The government's theory at trial was that Mann acted as part of a conspiracy of individuals to target Dr. Pierce due to his activities as chairman of the Board. Among the charges was one count of using and conspiring to use a weapon of mass destruction against a person or property within the United States and one count of aiding and abetting in the damaging or destruction of a vehicle used in an activity affecting interstate commerce by means of an explosive. Following a five-week trial that began in July 2010, Mann was convicted on those two counts as well as other charges. He was sentenced to life imprisonment in 2011. Mann was also ordered to pay restitution in the amount of $1,015,281.24.

On January 27, 2010, the Pierces filed a complaint that named Mann and three John Does as defendants. Count I of the complaint alleges that Mann committed the torts of assault and battery against Dr. Pierce. Count II of the complaint alleges civil conspiracy, specifically that Mann and several unknown individuals entered into an agreement for the

unlawful purpose of causing serious physical injury or death to Dr. Pierce. Count III alleges entitlement to punitive damages. In the complaint, the Pierces allege entitlement to compensatory damages for injuries to Dr. Pierce and loss of consortium by Melissa Pierce.

On December 26, 2012, the Pierces filed a motion for summary judgment as to liability for compensatory and punitive damages. In the motion, the Pierces argue that Mann's convictions should bar him from relitigating his liability for the injuries sustained by Dr. Pierce in the explosion. Mann opposed the motion for summary judgment, contending that the offensive use of collateral estoppel sought by the Pierces is not allowed in Arkansas except from a conviction for murder, that the general principles underlying offensive collateral estoppel do not support expanding its use in this case, that the prior counts of conviction do not preclude any issue in this case, and that the use of offensive collateral estoppel is premature because Mann's convictions are on appeal.

Following a hearing on the motion for summary judgment, the circuit court entered an order on December 19, 2013, in which it granted the Pierces' motion for partial summary judgment as to liability. The circuit court determined that offensive collateral estoppel could be applied as a result of Mann's criminal convictions if the requirements for the application of the doctrine as set forth in case law were present. The circuit court then determined that the requirements were present and granted the motion for partial summary judgment. A jury trial was held on the issue of damages. The jury awarded Dr. Pierce $12,500,000 in compensatory damages and $100,000,000 in punitive damages. The jury also awarded Melissa Pierce $5,000,000 in compensatory damages for loss of consortium and $5,000,000 in punitive damages. The total judgement awarded by the jury was $122,500,000. On May

23, 2015, the circuit court entered a judgment reflecting the jury's award of damages. This appeal followed.

We must first address the notice of appeal. The notice of appeal shall designate the judgment, decree, order or part thereof appealed from. Ark. R. App. P.—Civ. 3(e) (2015). This court has noted that the procedural steps outlined in Rule 3(e) require only substantial compliance, provided that the appellee has not been prejudiced by the failure to comply strictly with the rule. *See Rogers v. Tudor Ins. Co.*, 325 Ark. 226, 925 S.W.2d 395 (1996). Here, the notice of appeal is technically deficient because it does not designate the final judgment that awarded monetary damages to appellees, which is the only final, appealable order in the record, as the order appealed from. Although the notice of appeal states that Mann is appealing from the order granting partial summary judgment, which was entered over a year before the notice of appeal was filed, and does not reference the final judgment, the summary-judgment order was not a final, appealable order, and no appeal could be taken from that order until the final judgment was entered by the circuit court. The notice of appeal was filed within thirty days of entry of the final judgment. We hold that the notice of appeal substantially complies with Rule 3(e), as appellant appealed from the summary judgment order at the first available opportunity, filed a notice that was timely as to the final judgment, and there was no prejudice to appellees due to the failure of the notice to reference the final judgment.

Mann first argues that the trial court erred by improperly expanding the *Zinger* exception to the offensive-collateral-estoppel rule. We disagree. This court has approved the use of offensive collateral estoppel from a prior civil judgment. *Johnson v. Union Pac.*

*RR.*, 352 Ark. 534, 104 S.W.3d 745 (2003). In *Zinger v. Terrell*, 336 Ark. 423, 985 S.W.2d 737 (1999), this court approved the application of offensive collateral estoppel to a conviction for murder. To date, offensive collateral estoppel has not been applied to a conviction for any other kind of criminal offense. Our reading of the opinion in *Zinger* reveals that there is no reason why it cannot be so applied. In *Zinger*, this court spent a great deal of time discussing how the view of the use of offensive collateral estoppel has changed in the majority of jurisdictions. In this discussion, we cited a number of cases from other jurisdictions in which convictions for offenses other than murder were given preclusive effect in later civil proceedings. *In re Marquardt,* 778 P.2d 241 (Ariz. 1989) (possession of marijuana); *Teitelbaum Furs, Inc. v. Dominion Ins. Co.,* 375 P.2d 439 (Cal. 1962) (theft and filing a fraudulent insurance claim); *Warmouth v. Delaware State Bd. of Exam'rs in Optometry,* 514 A.2d 1119 (Del. Super. Ct.1985) (sexual assault); *Aetna Cas. & Surety Co. v. Niziolek,* 481 N.E.2d 1356 (Mass. 1985) (burning property to collect insurance proceeds); *Jordan v. McKenna,* 573 So.2d 1371 (Miss. 1990) (rape); *Aubert v. Aubert,* 529 A.2d 909 (N. H. 1987) (attempted murder). The opinion contains no indication that the doctrine was applied due to the existence of some special circumstance pertaining to a conviction for murder. Instead, the opinion in *Zinger* reflects the acknowledgment of a national trend, and there is no reason for the court to stand against that trend. We hold that offensive collateral estoppel may be applied to convictions other than ones for murder if the doctrine would otherwise be applicable under our case law.

Having determined that the doctrine *may* apply to Mann's convictions, we must now determine whether it *should* apply to his convictions. The doctrine of collateral estoppel,

SLIP OPINION

or issue preclusion, bars the relitigation of issues of law or fact actually litigated by the parties in the first suit, provided that the party against whom the earlier decision is being asserted had a full and fair opportunity to litigate the issue in question and that issue was essential to the judgment. *Powell v. Lane*, 375 Ark. 178, 186, 289 S.W.3d 440, 445 (2008). The doctrine is applicable to preclude relitigation of issues in state court that were previously decided in federal court. *Palmer v. Ark. Council on Econ. Educ.*, 344 Ark. 461, 40 S.W.3d 784 (2001). *Zinger* recites the four requirements for the application of collateral estoppel: (1) the issue sought to be precluded must be the same as that involved in the prior litigation; (2) the issue must have been actually litigated; (3) the issue must have been determined by a final and valid judgment; and (4) the issue must have been essential to the judgment. 336 Ark. at 430, 985 S.W.2d at 741. In *Johnson v. Union Pacific Railroad*, *supra*, this court stated that application of the doctrine might be unfair (1) where the defendant is sued for small or nominal damages and may not have had incentive to defend vigorously; (2) where the judgment relied upon for estoppel is itself inconsistent with one or more previous judgments in favor of the defendant; and (3) where the second action affords the defendant procedural opportunities unavailable in the first action that could cause a different result. 352 Ark. at 545–46, 104 S.W.3d at 751 (citing *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322 (1979)).

Mann argues that collateral estoppel is not applicable in this case because the criminal trial did not determine the same facts the Pierces must prove in the civil trial. Among the convictions at Mann's criminal trial was one for use of weapons of mass destruction. A person commits that offense if the person, without lawful authority uses, threatens, attempts or conspires to use a weapon of mass destruction against any person or property within the

United States and such property is used in interstate or foreign commerce or in an activity that affects interstate or foreign commerce. 18 U.S.C.A. § 2332a. In order to prove the alleged torts of assault and battery, the Pierces would have to prove that Mann intentionally placed Dr. Pierce in fear of immediate physical harm and (2) that he acted with the intent to cause harmful contact to Dr. Pierce and did so. AMI Civ. 418 and 419 (2015).

Mann is correct to the extent that he contends that the elements of proof for his criminal charges and the elements of proof for the torts asserted by the Pierces do not line up completely. That means there exists the possibility of a set of facts whereby one could be found guilty of the criminal offenses for which Mann was convicted without the necessary elements for the torts of assault and battery having been decided. This case, however, does not present that set of facts. Here, in order to convict Mann, the federal jury was required to believe that he participated in a scheme whereby an explosive was secreted in a spare tire that was placed against Dr. Pierce's personal vehicle in a manner such that, when it was moved, it would explode. This court has held that one is presumed to intend the natural and probable consequences of his actions. *See Metcalf v. Jelks*, 177 Ark. 1023, 8 S.W.2d 462 (1928). The natural and probable consequences of the actions that the jury was required to believe had either been taken or facilitated by Mann were that Dr. Pierce would be either seriously injured or killed. These facts prove the necessary elements of the tort

claims made by the Pierces, and there were no other facts adduced at the criminal trial that would have supported Mann's convictions for the relevant criminal charges.[1]

Mann also asserts that the Pierces cannot recover from him for civil conspiracy because he was convicted of involvement in a conspiracy, and the Pierces are not seeking judgment from "the actual tortfeasors." However, his argument on this point consists solely of that statement and citation to a Comment to Arkansas Model Jury Instruction—Civil 714 which cites two cases from other jurisdictions that support Mann's position and then states that Arkansas has not addressed the issue. Mann has failed to develop a convincing argument on this issue. It is axiomatic that this court will not consider arguments that are unsupported by convincing argument or sufficient citation to legal authority. *Ganey v. Kawasaki Motors Corp., U.S.A.*, 366 Ark. 238, 244, 234 S.W.3d 838, 842 (2006). We decline to consider this argument.

Mann next argues that it would be unfair to apply offensive collateral estoppel in this case because the civil action would afford him with procedural safeguards that were unavailable in the first trial. Specifically, he contends that there would be available at a civil trial discovery in the form of deposition testimony that was unavailable at the criminal trial. There are multiple problems with this argument. First, Mann makes no assertion that the preparation for his criminal trial was incomplete. Also, given that the criminal trial lasted five weeks, it cannot be said that he lacked a full and fair opportunity to litigate his

---

[1] We note that Mann's argument does not address Melissa Pierce's claim for loss of consortium separately from Dr. Pierce's claims for assault and battery, nor does his argument address the torts of assault and battery separately.

responsibility for the actions that led to Dr. Pierce's injuries with a higher burden of proof than he would face in a civil trial. As the Illinois Supreme Court observed in *American Family Mutual Insurance Company v. Savichas*, 739 N.E.2d 445 (Ill. 2000), the differences between civil and criminal litigation mitigate in favor of affording preclusive effect to criminal convictions in light of their reliability. Second, Mann gives this court no indication of what possible evidence would be available through depositions not taken in preparation for his criminal trial that would change the result. Mann also complains that there were charges in his criminal trial that were improperly joined. He successfully argued the improper joinder issue to the Eighth Circuit; however, that court found that he was not prejudiced by the improper joinder. *See United States v. Mann*, 701 F.3d 274, 291 (8th Cir. 2012). We do not see how the issue of improper joinder would prejudice him in the civil trial when it did not prejudice him in the criminal trial. Mann's arguments regarding procedural safeguards are without merit.

Mann's final argument is that application of offensive collateral estoppel is premature because the underlying case remains subject to reversal. We see no merit to this argument. As the Pierces note in their responsive brief, Arkansas follows the majority rule that a judgment is final for purposes of issue preclusion despite a pending appeal for a review of the judgment, unless the appeal actually consists of a trial de novo. *John Cheeseman Trucking, Inc. v. Pinson*, 313 Ark. 632, 855 S.W.2d 941 (1993). Mann was convicted and he appealed the substantive nature of those convictions to the Eighth Circuit, which affirmed. He is apparently seeking postconviction relief, in which he necessarily cannot attack the factual

basis underpinning the verdict rendered by the jury in the criminal trial. As such, the jury's verdict in the criminal matter should be given preclusive effect.

The order of the Crittenden County Circuit Court granting partial summary judgment in favor of the Pierces on the issue of liability and the monetary judgment entered against Mann are hereby affirmed.

Prior to oral argument in this case, appellees asked this court to take judicial notice of the decision by the United States District Court for the Eastern District of Arkansas in which Mann's postconviction claim for ineffective assistance of counsel was denied. In his response, Mann filed a supplemental motion to take judicial notice in which he requested that this court take judicial notice of his postconviction proceedings in federal court. The motions to take judicial notice are denied.

Affirmed; motions denied.

GOODSON, J., concurs.

WOOD, J., concurs in part and dissents in part.

HART, J., dissents.

**COURTNEY HUDSON GOODSON, Justice, concurring.** We accepted certification of this case from our court of appeals. In the certification memorandum transmitted by the court of appeals, the court asked us to consider an issue it believes to be of jurisdictional significance concerning the contents of a notice of appeal, noting an apparent conflict between the decisions of this court and the court of appeals. Rightfully so, the majority opinion resolves this conflict. I write separately to underscore why it is necessary to address the issue raised by the court of appeals.

Mann's notice of appeal states that he is appealing the "[o]rder filed December 19, 2013 (and dated December 6, 2013) granting Plaintiffs' Motion for Summary Judgment as to Liability for Compensatory and Punitive Damages." The certification memo from the court of appeals suggests that the designation of the order appealed from is faulty because it does not list the final order entered on March 23, 2015, from which an appeal can be taken. The court points out that it has dismissed appeals where the final order is not designated in the notice of appeal. *See, e.g.*, *Brown v. United Bank*, 2014 Ark. App. 448 S.W.3d 726; *Daniel v. State*, 64 Ark. App. 98, 983 S.W.2d 146. It further observes that these decisions appear to be inconsistent with this court's opinion in *Vimy Ridge Municipal Water Improvement District No. 139 of Little Rock v. Ryles*, 373 Ark. 366, 284 S.W.3d 70 (2008). By certifying this case to us, the court of appeals is seeking clarification of the rule and is asking us to resolve the conflict in the decisions of our appellate courts.

In *Jasper v. Johnny's Pizza*, 305 Ark. 318, 807 S.W.2d 664 (1991), the notice of appeal failed to designate the judgment or order being appealed as required by Rule 3(e). We held that this was not a fatal defect that required the dismissal of the appeal. Instead, this court held that it is the timing of a notice of appeal that is of jurisdictional significance. *See also Davis v. Ralston Purina Co.*, 248 Ark. 14, 449 S.W.2d 709 (1970) (holding that the filing of a notice of appeal is jurisdictional but irregularities in the other procedural steps found in Rule 3(e) are merely grounds for such action as this court deems appropriate). In subsequent decisions, we have held that an appellant's failure to strictly comply with the provisions of Rule 3(e) does not render the notice of appeal automatically void. *Vimy Ridge*, *supra*; *Dugal Logging, Inc. v. Ark. Pulpwood Co.*, 336 Ark. 55, 984 S.W.2d 410 (1999); *Green v. Williford*,

331 Ark. 533, 961 S.W.2d 966 (1998). This court has also observed that the procedural steps outlined in Rule 3(e) require only substantial compliance, provided that the appellee has not been prejudiced by the failure to comply strictly with the rule. *Rogers v. Tudor Inc. Co.*, 325 Ark. 226, 925 S.W.2d 395 (1996); *Hudson v. Hudson*, 277 Ark. 183, 641 S.W.2d 1 (1982). Even so, my research reveals a degree of inconsistency in our own decisions. *See, e.g., Lindsey v. Green*, 2010 Ark. 118, 369 S.W.3d 1 (dismissing a cross-appeal where the appealing party failed to designate the order it was cross-appealing).

The court of appeals has squarely presented this question to us, and the opportunity presents itself to resolve the issue in this appeal. Obviously, there is a need for clarification because the court of appeals is treating this as a jurisdictional issue, when clearly it is not. If this court did not provide an analysis of this fundamental issue, we would be abdicating our responsibility to educate and to provide guidance when the law appears to be uncertain. There is no sound reason to avoid addressing this point. By settling this issue, the court of appeals will no longer improperly dismiss an appeal based on this defect in a notice of appeal. I submit that answering this question is a worthwhile endeavor.

**RHONDA K. WOOD, Justice, concurring in part and dissenting in part.** The majority begins a discussion of the merits of the appeal stating, "We must first address the notice of appeal." This statement is an error. "[A]bsent an issue of subject-matter jurisdiction, an appellate court will not raise an issue unless argued by the parties on appeal." *Edwards v. Edwards*, 2009 Ark. 580, at 8, 357 S.W.3d 445, 450. Accordingly, I concur in the majority opinion as to the merits of the case but dissent from the majority's discussion on the sufficiency of the notice of appeal.

I believe it was an error for the court to address the sufficiency of the notice of appeal because neither party raised the issue. This court has repeatedly held that we will not raise issues on our own unless they are jurisdictional. *Id.* The sufficiency of a notice of appeal is not jurisdictional. Rule 1-2 of the Rules of the Arkansas Supreme Court sets out the cases over which our court has subject–matter jurisdiction. Ark. Sup. Ct. R. 1-2 (2016). Alternatively, Rule 3(e) of the Arkansas Rules of Appellate Procedure–Civil governs the content of the notice of appeal. Ark. R. App. P.–Civ. 3(e) (2016). If an appellee believes the appellant has failed to comply with this rule, the issue may be raised in the appellee's brief, and it will be properly before this court to consider. Lack of compliance with our rules of appellate procedure does not impact our subject–matter jurisdiction. Furthermore, we should not reach the merits on issues that will have a profound effect on appellate practice without giving the parties the opportunity to fully brief the issues.

Our court accepted a transfer of this case from the court of appeals. One reason our court accepted it was to address the offensive use of collateral estoppel; this was necessary. While the court of appeals' certification memorandum also referenced its concern with the sufficiency of the notice of appeal, we are not required to address that issue. If anything, the certification memorandum demonstrates the court of appeals' misunderstanding that rules of appellate procedure are not jurisdictional. We should not continue to exacerbate the confusion by addressing the issue sua sponte.[2] If this court feels compelled to address

---

[2] Courts also have misclassified issues as jurisdictional, rather than procedural, in criminal cases. In *Brown v. State*, 2015 Ark. 97, (per curiam) (J. Danielson, concurring), Justice Danielson details this court's departure in 2005 from construing the Rule 37 verification requirement as a procedural rule to a jurisdictional rule. In my opinion, this

this issue it should only do so to explicitly explain that the issue is *not jurisdictional* and, therefore, *should not* be addressed by the court of appeals sua sponte in the future. Such an explanation would be more instructive, as well as accurate.

I can only assume that since the majority is sua sponte raising the issue, that it incorrectly believes compliance with Rule 3(e) of the Arkansas Rules of Appellate Procedure–Civil is jurisdictional. That is incorrect. Subject-matter jurisdiction is the power of the court to hear and determine the subject matter in controversy between the parties. A court lacks subject-matter jurisdiction "if it cannot hear a matter 'under any circumstances' and is 'wholly incompetent to grant the relief sought.'" *Nance v. State*, 2014 Ark. 201, at 15, 433 S.W.3d 872, 881 (quoting *J.W. Reynolds Lumber Co. v. Smackover State Bank,* 310 Ark. 342, 352–53, 836 S.W.2d 853, 858 (1992)). Amendment 80, section 3, to the Arkansas Constitution provides the supreme court with the authority "to prescribe the rules of pleading, practice and procedure." Procedural rules are aptly defined as claim-processing rules. *See Kontrick v. Ryan*, 540 U.S. 443, (2004). "Procedural law is defined as '[t]he rules that prescribe the steps for having a right or duty judicially enforced, as opposed to the law that defines the specific rights or duties themselves.'" *Summerville v. Thrower*, 369 Ark. 231, 237, 253 S.W.3d 415, 420 (2007) (citing *Black's Law Dictionary* 1221 (7th ed. 1999)). Our rules regarding the content of a notice of appeal are to ensure the parties and the court are

---

departure was inaccurate—verification has no effect on the circuit court's or this court's subject-matter jurisdiction and should not be raised sua sponte.

aware of what issues are being raised on appeal. This procedural rule has no impact on our jurisdiction. As Justice Ginsburg explained,

> Courts, including this Court, it is true, have been less than meticulous [in their use of the term jurisdictional]; they have more than occasionally used the term "jurisdictional" to describe emphatic time prescriptions in rules of court. "Jurisdiction," the Court has aptly observed, "is a word of many, too many meanings." . . . Clarity would be facilitated if courts and litigants used the label "jurisdictional" not for claim-processing rules, but only for prescriptions delineating the classes of cases (subject-matter jurisdiction) and the persons (personal jurisdiction) falling within a court's adjudicatory authority.

*Kontrick*, 540 U.S. at 454–55 (citations omitted).

This court should heed Justice Ginsburg's instruction and discontinue our erroneous labeling of rules of appellate procedure as jurisdictional. Consequently, we should not address compliance with those rules unless the issue is raised by the parties. Therefore, I dissent from the majority's decision to sua sponte decide whether the appellant complied with our procedural rules.

**JOSEPHINE LINKER HART, Justice, dissenting.** In *Johnson v. Union Pac. R.R.*, 352 Ark. 534, 546, 104 S.W.3d 745, 751 (2003), this court accepted the use of offensive collateral estoppel in "limited cases," as outlined by the United States Supreme Court in *Parklane Hosiery Co. v. Shore*, 439 U.S. 322 (1979). In *Parklane Hosiery*, the Court stated, "Collateral estoppel . . . has the dual purpose of protecting litigants from the burden of relitigating an *identical* issue with the same party or his privy and of promoting judicial economy by preventing needless litigation." *Id.* at 326 (emphasis added). The Court further stated, "Under the doctrine of collateral estoppel . . . the second action is upon a different

cause of action and the judgment in the prior suit precludes relitigation of *issues actually litigated* and necessary to the outcome of the first action." *Id*. at 327 n.5 (emphasis added).

In its opinion, the majority cites *Zinger v. Terrell*, 336 Ark. 423, 985 S.W.2d 737 (1999), for the often-stated requirements for collateral estoppel: the issue sought to be precluded must be the *same* as that involved in the prior litigation, the issue must have been *actually litigated*, the issue must have been determined by a final and valid judgment, and the issue must have been essential to the judgment. The majority, however, then abandons the notion that collateral estoppel requires identical issues that were actually litigated. Instead, it employs a much broader test—that "the elements of proof for [the] criminal charges and the elements of the proof for the torts . . . do not [have to] line up completely."

The federal criminal statute under which Randeep Mann was convicted provides as follows:

> A person who, without lawful authority, uses, threatens, or attempts or conspires to use, a weapon of mass destruction . . . (2) against any person or property within the United States, and (A) the mail or any facility of interstate or foreign commerce is used in furtherance of the offense; (B) such property is used in interstate or foreign commerce or in an activity that affects interstate or foreign commerce; (C) any perpetrator travels in or causes another to travel in interstate or foreign commerce in furtherance of the offense; or (D) the offense, or the results of the offense, affect interstate or foreign commerce, or, in the case of a threat, attempt, or conspiracy, would have affected interstate or foreign commerce . . . shall be imprisoned for any term of years or for life, and if death results, shall be punished by death or imprisoned for any term of years or for life.

18 U.S.C. § 2332a.

For the tort of assault, it must be shown that the defendant acted in such a manner as to create a reasonable apprehension of immediate harmful or offensive contact upon the person of the plaintiff, that the defendant intended to cause that apprehension, and that the

plaintiff was actually put in that apprehension. AMI Civ. 417 (2016). Whether—immediately prior to the explosion—Randeep Mann intended to create the apprehension of immediate harmful or offensive contact by leaning a spare tire against Trent Pierce's car, or whether Trent Pierce was feeling "apprehension" when he saw a spare tire that had been leaned against his car, were questions not tried in the federal criminal case. Because it was not decided in federal court, the question of "apprehension" should have been decided by a finder of fact in state court. Furthermore, the federal crime does not require proof of harmful or offensive contact. This, too, was a question that should have been decided by a finder of fact in state court.

For the tort of battery, it must be shown that the defendant acted with the intent to cause some harmful or offensive contact with a person or acted with the intent to create the apprehension of some harmful or offensive contact with a person and that a harmful or offensive contact with the plaintiff resulted. AMI Civ. 418 (2016). However, the federal criminal charge permits a conviction for use of a weapon of mass destruction against property *or* a person. Damage to property will not suffice to establish the tort of battery. Moreover, the tort of battery requires proof of harmful or offensive contact. The federal crime does not. While the majority dismisses these distinctions by saying that it presupposes a set of facts that do not exist, that is clearly wrong. The facts are that a weapon of mass destruction was used against property, so a federal conviction could have been imposed on those facts alone. Those facts do not suffice for the tort of battery, which requires proof of harmful or offensive contact with a person. The majority appears to engage in speculation regarding which facts the federal criminal conviction turned on, and it wrongly assumes that the

elements of battery—harmful or offensive contact with a person—were actually litigated in the federal criminal case. Put simply, Mann was not charged with assault or battery in federal criminal court.

I submit that the majority will wish it had been more circumspect when circuit courts apply this newly expanded doctrine of offensive collateral estoppel in future cases. I respectfully dissent.

BAKER, J., joins in this dissent.

*Gill Ragon Owen P.A.*, by: *Drake Mann* and *Christopher L. Travis*, for appellant.

*Cearly Law Firm, P.A.*, by: *Robert M. Cearly, Jr.*; and *Brian G. Brooks, Attorney at Law, PLLC*, by: *Brian G. Brooks*, for appellees.