South Ark. Feed Mills, Inc. *v.* Roberts.

5-2635                                    356 S. W. 2d 645

Opinion delivered April 16, 1962.

[Rehearing denied May 21, 1962.]

*Shackleford & Shackleford,* for appellant.

*Gannaway & Gannaway* and *Wright, Lindsey, Jennings, Lester & Shults,* for appellee.

Paul Ward, Associate Justice. This appeal challenges the judgment of the circuit court which affirmed the Workmen's Compensation Commission. It is not disputed that the claimant, Edwin Roberts, was injured or that he is entitled to compensation payments. The only question for decision is: Who was Roberts' employer at the time of his injury—*i.e.* who is responsible for payment of benefits?

*Factual Background.* It is appellants' contention that one of two other companies was Roberts' employer,,

so it is pertinent to identify the three companies concerned and the relationship of each to the employment of Roberts.

*South Arkansas Feed Mills, Inc.* (hereafter referred to as "South-Ark.") was incorporated March 18, 1959. Keith Smith was elected its Secretary and General Manager. Among the share-holders and directors were Keith Smith and Bob McClure. *Keith Smith Company* will hereafter be referred to as the "Smith Co." Its president was Keith Smith. *The Bob McClure Produce Company* will hereafter be referred to as the "Produce Co." Its owner and manager was Bob McClure who was also director in South-Ark. The claimant, Edwin Roberts, was a regular full time employee of this company subject only to the circumstances later set out.

On April 16, 1959 South-Ark., by its Board of Directors, authorized Keith Smith to have a feed mill constructed for that company. Pursuant thereto, on May 5, 1959, South-Ark. also entered into a contract with the Smith Co. to secure the services of one Loyd Chapmond (an employee of the Smith Co.) for one year, agreeing in effect to pay for his services. Chapmond, who was an engineer, was to supervise the construction of the said feed mill. It appears that actual construction of the mill was begun promptly, with Roberts as one of the employees on that job.

It is pertinent to explain the status of Roberts. He had been a regular employee of the Produce Co., as a mechanic, since November 5, 1955, but on April 19, 1959 it was arranged for him to work part time on the construction of the new feed mill. The arrangements were that Roberts would receive $70 per week to be paid by checks issued by the Produce Co. with the Produce Co. being partially reimbursed by South-Ark. to the extent of $20 to $50 per week. By agreement Roberts worked part time for the Produce Co. and part time on the mill job. Apparently the Produce Co. paid Roberts for the

time he worked for it and South-Ark. paid him for the time he worked on the mill job.

Roberts (claimant) was injured on March 10, 1960 while working on the mill job under the circumstances heretofore set forth. In the presentation of Roberts' claim for compensation the only controversial issue was which of the three companies above mentioned should be responsible for making the payments. As before stated, the circuit court affirmed the Commission, both holding that South-Ark. was the responsible company. South-Ark. now prosecutes this appeal to reverse the judgment of the circuit court.

*The Findings and Conclusions of the Commission* will be clarifying and helpful. *Findings*: The relationship of employer and employee existed between South-Ark. and claimant when he was injured and had so existed for about eleven months theretofore. *Conclusions*: 1. The most reasonable interpretation of the evidence is that claimant was a special employee of South-Ark. at the time of his injury; 2. Shortly after claimant began work for South-Ark. he agreed to such employment, and he was paid by that company for his work; 3. South-Ark. exercised control over claimant while he was working for it and directed him as to what work to do and how to do it, and all such work was for its benefit. 4. Although both the Produce Co. and the Smith Co. paid (insurance) premiums on claimant and Chapmond respectively, the said premiums should have been paid by South-Ark., but that does not in anywise preclude claimant from being an employee of South-Ark. (It appears that South-Ark. also paid premiums on Roberts.)

After carefully considering the record in this case together with the excellent and exhaustive briefs presented by all parties we have reached the conclusion that the judgment of the circuit court must be affirmed.

We think appellants have clearly and correctly pointed out the framework to be followed and the decisive issues to be considered in arriving at a proper conclusion in their quotation from 1 *Larson's Workmen's Com-*

*pensation Law,* 710, where under the heading "Lent Employees and Dual Employment" there appears the **following:**

"§ 48.00   When a general employer lends an employee to a special employer, the special employer becomes liable for workmen's compensation only if

"(a) The employee has made a contract for hire, express or implied, with the special employer;

"(b) The work being done is essentially that of the special employer; and

"(c) The special employer has the right to control the details of the work."

Giving the findings of the Commission the same force as the findings of a jury, as we are bound to do we think there is substantial evidence in the record to support the Commission's findings (set out above) that the three requirements are fully satisfied in this case.

(a)   The Commission was justified in finding that South-Ark. either expressly or impliedly hired Roberts. His employment is admitted, and it remains only to determine who hired him or whose employee he was. It seems obvious he was not hired by the Produce Co. at the time of his injury because he was not doing any work for that company and it was not paying him. It is most difficult to understand how Roberts could have been an employee of the Smith Co. unless that company was an independent contractor employed to construct the mill, and there is no contention or evidence this was the situation. It is, of course, true that Roberts was formerly a regular employee of the Produce Co. and that he did, at times, work for it while the mill was being constructed, but these facts alone do not preclude him from being an employee of appellant at the time he was injured. See: *Larson, supra,* § 48.50; *Stuyvestant Corporation* v. *Waterhouse* (Fla.) 74 So. 2d 554; *Seaman Body Corporation* v. *Industrial Commission,* 204 Wis. 157, 235 N. W. 433; and *Nepstad* v. *Lambert,* 235 Minn. 1, 50 N. W. 2d 614.

In the *Waterhouse* case, *supra*, at page 559, the Court said:

"Basically and fundamentally, after all the chaff is cast aside, the solution of almost every such case finally depends upon the answer to the basic, fundamental and bedrock question of whether as to the special employer the relationship of employer and employee existed at the time of the injury. If the facts show such relationship, the existence of a general employer should not change or be allowed to confuse the solution of the problem."

Likewise in the *Lambert* case, *supra*, at page 621, it was said:

"Since both employers may each have some control, there is nothing logically inconsistent, when using this test, in finding that a given worker is the servant of one employer for certain acts and the servant of another for other acts. . . . The crucial question is which employer had the right to control the particular act giving rise to the injury. In this connection, Restatement, Agency, § 227, *comment a* (2), states:

". . . Since the question of liability is always raised because of some specific act done, the important question is not whether or not he remains the servant of the general employer as to matters generally but whether or not, *as to the act in question,* he is acting in the business of and under the direction of one or the other.' (Italics supplied.)"

(b) There can be no question that the work Roberts was doing at the time of his injury was for South-Ark. and for its benefit. It is undisputed that South-Ark. authorized the building of the mill, that it was paying for it, and that it would own the mill when constructed. Clearly Roberts' work did not benefit the Produce Co. and it could not have benefited the Smith Co. unless, as previously stated, it was an independent contractor. Even though Bob McClure, manager of the Produce Co., and Keith Smith, president of the Smith Co., were both financially interested in South-Ark., still each of the three companies is a separate legal entity and, in this case, must be treated as such.

(c)   Finally, it remains to determine which of the three companies had the right to control the details of Roberts' work on the mill job.  Again, we can proceed by the process of elimination.  We know of no evidence or reasonable theory upon which it can be held that the Produce Co. had the right to say what Roberts should or should not do while he was working on the mill job.  It was not paying Roberts and it does not show that it had any right whatsoever to control his activities on the mill job.  It may be that the Produce Co. could have induced Roberts to quit working on the mill job and return to full time work for it, but the point is that it did not exercise that right before Roberts was injured.  It is equally clear that the right to control Roberts' work on the mill job was lacking in respect to the Smith Co.  The only connection of the Smith Co. with the construction of the mill was that South-Ark. employed Chapmond (an employee of the Smith Co.) to supervise construction.  This was done, of course, with the consent of the Smith Co.  Chapmond was paid by South-Ark., and he was to work under the supervision of Keith Smith, who in turn was responsible to South-Ark. and not to the Smith Co.  Also, there is no contention that Roberts' services were contracted for either by Chapmond or the Smith Co.

On the other hand, there is direct substantial evidence that South-Ark. did have control over Roberts.  Bob McClure testified that he had no control over Roberts while he was working on the construction job, but that Chapmond did have.  Keith Smith, the general manager for South-Ark., testified that he could control Chapmond.  Chapmond testified that he had control over Roberts while working on the mill job, and that Roberts was injured while working for South-Ark.  Also, Roberts testified he took orders from Chapmond.

In view of all the above, we conclude that the judgment of the trial court must be, and it is hereby, affirmed.

Affirmed.