CHARLES *v.* LINCOLN CONSTRUCTION CO.

5-2754                                                361 S. W. 2d 1

Opinion delivered October 1, 1962.

[Rehearing denied November 5, 1962.]

*George Howard, Jr.,* for appellant.

*Eugene S. Harris* and *Bridges, Young & Matthews,* for appellee.

NEILL BOHLINGER, Associate Justice. The appellant in this case was a laborer who was injured while working on the construction of a school building at Star City, Arkansas. He filed a claim for workmen's compensation against the appellee, Lincoln Construction Company, alleging that he was an employee of the Lincoln Construction Company and had a compensable injury.

At a hearing before the Workmen's Compensation Commission that Commission disallowed his claim and an appeal was taken to the Lincoln Circuit Court which affirmed the finding of the Workmen's Compensation Commission and denied the claim against the Lincoln Construction Company from which action this appeal is prosecuted.

It appears from the record before us that the appellant had been employed from time to time by the appellee, Lincoln Construction Company, and that he worked under their foreman, Phillip McFall; that some time before the accident complained of the Star City School District decided to build two school buildings and deemed it more economical to do the work by its own employees rather than let a contract. The School District agreed with the appellees upon the use of appellee's foreman, Mr. McFall, as general superintendent in the operation of building the two schools. There is nothing in the record that indicates that the appellee had any contract with the School District

or interest in the erection of the two school buildings. Mr. McFall recruited his own laborers and the School District paid Mr. McFall and the laborers.

Mr. Dayton Fish was one of the partners in the Lincoln Construction Company and was a member of the School Board and in addition thereto he maintained a business known as the Builders Supply Company where for a number of years it was customary for most of the contractors in that vicinity to go to recruit their labor supply. The appellant had, from time to time, gone to the Builders Supply store and had been directed by Mr. McFall where to go or would be transported by McFall to the site of such work as would be required of him. It further appears that at times the appellant would work part of a day on the school job and the balance of the day at a Lincoln Construction job. Appellant's time on the various jobs was kept separately and he was paid according to the hours he worked on each job. All of his checks were received through McFall but wages earned at the school site were paid by a check on the School District and wages earned at a Lincoln Construction job were paid by a Lincoln Construction check.

In *South Arkansas Feed Mills* v. *Roberts,* 234 Ark. 1035, 356 S. W. 2d 645, opinion delivered April 16, 1962, we quoted from Larson's Workmen's Compensation Law, 710, under the heading "Lent Employees and Dual Employment":

"§ 48.00   When a general employer lends an employee to a special employer, the special employer becomes liable for workmen's compensation only if

(a) *The employee has made a contract for hire, express or implied,* with the special employer; [Emphasis added]

(b) The work being done is essentially that of the special employer; and

(c) The special employer has the right to control the details of the work."

In this case we also quoted from *Stuyvesant Corporation* v. *Waterhouse*, (Fla.) 74 So. 2d 554, as follows:

"Basically and fundamentally, after all the chaff is cast aside, the solution of almost every such case finally depends upon the answer to the basic, fundamental and bedrock question of whether as to the special employer the relationship of employer and employee existed at the time of the injury. If the facts show such relationship, the existence of a general employer should not change or be allowed to confuse the solution of the problem."

Likewise we quoted from the *Nepstad* v. *Lambert case*, 235 Minn. 1, 50 N. W. 2d 614:

"Since both employers may each have some control, there is nothing logically inconsistent, when using this test, in finding that a given worker is the servant of one employer for certain acts and the servant of another for other acts . . . The crucial question is which employer had the right to control the particular act giving rise to the injury. In this connection, Restatement Agency, § 227, *comment* a (2) states:

'* * * Since the question of liability is always raised because of some specific act done, the important question is not whether or not he remains the servant of the general employer as to matters generally but whether or not, *as to the act in question,* he is acting in the business of and under the direction of one or the other.' (Italics supplied.)"

It appears clear from the record and the Commission and trial court so found, that appellant Charles was working for two different employers at different times and that the work was separable. This presents the question as to whether or not the appellant knew and consented to work for the School District. The case of *Ledbetter* v. *Adams*, 217 Ark. 329, 230 S. W. 2d 21, covers this situation:

"* * * the authorities hold (1) *that the original employer remains liable under the Workmen's Compensation Act, until there has been a reasonable time, or course of events, for knowledge of change of employer*

*to be brought home to the employee;* and (2) that the relationship of employer and employee is presumed to continue for a reasonable time after a sale of the business made without the knowledge of the employee. See *Palmer* v. *Main,* 209 Ky. 226, 272 S. W. 736; *Buchanan Min. Co.* v. *Henson,* 228 Ky. 367, 15 S. W. 2d 291; Schneider's Workmen's Compensation Test, Perm. Ed., § 788; Horowitz on 'Workmen's Compensation,' p. 228, *et seq.;* and also 71 C. J. 397 * * *.'' [Emphasis added]

The contention is made that Charles, the appellant, was the employee of the appellee but the appellee had no control of nor financial interest in the work on which appellant was injured and we think that more than three months time is a reasonable time and the courses of events are such as to bring home to appellant the status of his employment. Testifying in his own behalf appellant was asked as to the kind of checks he received:

''A.   I'd get a green one from over to the school and I'd get a pink one from Lincoln Construction.

\*   \*   \*

Q.   And so you knew then that when you were working over at the schools you would get paid by a green check signed by the Superintendent, didn't you?

A.   That's right.

Q.   And you knew that when you went to what you call a Lincoln Construction job you got paid for that by a pink check?

A.   That's right.

\*   \*   \*

Q.   I'm talking about when you got hurt that day. You knew by that time that you were being paid by the school district, didn't you?

A.   Oh, yes, sir, I knowed it then.

Q.   Didn't Mr. McFall keep a record of the time you spent out there on the School District and isn't that the time you got paid for by the school?

A.   That's right.''

A fellow workman, Sherman Rochelle, whose employment was in all respects similar to that of appellant, testified as follows:

"Q.   Now, Sherman, when you are working out there for the school, who do you understand you are working for?

A.   Mr. Phillip McFall.  At least I know what they said, I was working for the school but I was assigned on to him.

Q.   You work where Mr. McFall tells you but when you are out there working on the school ground site or you know where they are building the school, don't you understand you are working for the School District at that time?

A.   Yes, sir.

Q.   Isn't that who pays you?  I mean isn't that the kind of check you get at the end of the week?

A.   I get a school check."

Further on in the testimony he was asked:

"Q.   Don't you know the school is going to pay you for the work you do on their building?

A.   Yes, sir."

It therefore appears clear that the appellee had no interest in the school construction job and in no wise controlled it and that the evidence sustains, and the Commission and the Court so found, that the appellant, by reason of the time and course of events, was bound to have become aware of the status of his employment.

The judgment of the Circuit Court is affirmed.

HARRIS, C. J., not participating.

ROBINSON and JOHNSON, JJ., dissent.

SAM ROBINSON, Associate Justice, (Dissenting). There is no substantial dispute about the facts in this case.  The appellant claimant, Joe Louis Charles, a negro, 24 years of age, had been working in the construction business as a

common laborer for three years. At the time he was sent by his employer, the Lincoln Construction Company, to work on the school job, he had worked continuously for Lincoln without any interruption at all for two years; he had worked every working day.

During the time he worked on the school building, he reported to work every morning at the Lincoln Company's place of business; the same place he had reported for work every day for two years. Never at any time did his regular employer, Mr. Fish, the owner of the Lincoln Company, Mr. McFall, the superintendent for the Lincoln Company, or anyone else, tell him that he was not working for the Lincoln Company.

With the possible exception of the fact that apparently, on three occasions, he received weekly checks of a different color than those ordinarily used by the Lincoln Company, there is not a scintilla of evidence in the record to the effect that the claimant had any knowledge whatever that he was not working for the Lincoln Company at the time he was injured. Certainly a different colored check would not be of any significance to the employee when all the checks were signed by his regular employer, Dayton Fish. According to the record, Mr. Fish signed the checks issued by the Lincoln Company, and as Secretary of the School Board, he signed checks issued by the school. Can it be said this was sufficient to give a common laborer notice that he had been fired by his regular employer without his knowledge or consent and employed by someone else without his knowledge or consent?

In addition to the positive testimony of the appellant that he thought he was still working for the Lincoln Company, all the circumstantial evidence points to the fact that he had no reason to believe that he was working for someone else. He reported to the Lincoln Company place of business every morning for work; he did not work at one particular job; even on the same days that he was working on the school job, he was sent by the Lincoln Company to various other jobs; Mr. McFall, foreman for the Lincoln Company, was still his foreman; the Lincoln

Company's tools and equipment, including a tractor and a digger, were used on the school job the same as the other jobs; Mr. Fish, the same man who signed his checks for the Lincoln Company, signed the checks it is now claimed that he got from the school board; the checks were delivered to him by Mr. Fish, his regular employer, or Mr. McFall, his regular foreman. It is admitted that during the time it is claimed that McFall was in the employ of the school board he was the general foreman for the Lincoln Company. He kept the alleged school time and the Lincoln Company time all in the same book. Mr. McFall testified:

"Q. Glance back through there if you will for the preceding two or three weeks and see if you find his name as having worked for the Lincoln Construction Company?

A. He worked seven hours on December the 6th.

Q. Who was he working for at that time?

A. Wait just a minute. I am back on the school job here. I got the wrong one.

Q. Is that the last time prior to the January 3rd or whenever it was?

A. January 10th.

Q. When was that that he worked for the construction company?

A. He worked three days, four days. He worked four days in December. Let's see, this would be the 12th, 11th, 10th. He worked on the 10th, the 14th, the 15th, and the 17th.

Q. Of December?

A. Of December. I am all messed up here. I am on the School District again."

According to Mr. Fish's testimony, he simply loaned Charles to the School Board. Mr. Fish testified:

"Q. And if I understand your testimony it is then that at this particular time your work was slack so that you were able to spare both McFall and certain workers?

A. That's correct.

Q. To lend them, to allow them to work for the School District. Is that correct?

A. That is correct."

As heretofore pointed out, no one contends that the claimant, Charles, was ever told by anyone that he was not working for the Lincoln Company, just as he had worked for them continuously every day for two years, and it is not claimed by anyone that Lincoln ever surrendered control of its employee, Charles. In fact, it is entirely clear and beyond dispute that the Lincoln Company moved Charles around from job to job at its will. In *Anderson* v. *Northwestern Hospital,* 40 N. W. 2d 442, it was held that in determining who was the actual employer, payment of compensation was important, but where the original employer maintained control over the employee and assigned her to different institutions, there was no change in employer. In *Rhinelander Paper Co.* v. *Industrial Commission,* 239 N. W. 412, the Court said: "Where the employee enters the service of another at the command and pursuant to the direction of the master, no new relationship is created. While the employee may be subject to the direction of the temporary master, he is there in obedience to the command of his employer, and in doing what the new master directs him to do, he is performing his duty to the employer who gave the order. . . . It is clear that the claimant was performing services in obedience to the direction of the master and there was no consent on his part, express or implied, sufficient to make him the employee of the American Engineering Company."

In his work on Workmen's Compensation Law, Vol. I, at page 710, Professor Larson states: "Although the lent-service doctrine is a familiar one at common law, and has produced some of the most venerated and most

intricate cases in the law of master and servant, it is necessary to stress once more that the workmen's compensation lent-employee problem is different in one significant respect: there can be no compensation liability in the absence of a contract of hire between the employee and the borrowing employer. For vicarious liability purposes, the spotlight was entirely on the two employers— what they agreed, how they divided control, how they shared payment, and whose work, as between themselves, was being done. No one paid much attention to the employee or cared whether he had consented to the transfer of his allegiance, since, after all, his rights were not usually as a practical matter involved in the suit. In compensation law, the spotlight must now be turned upon the employee, for the first question of all is: did he make a contract of hire with the special employer? If this question cannot be answered 'yes', the investigation is closed, and there is no need to go into tests of relative control and the like.''

To support the view expressed, the majority cites two Arkansas cases. In my opinion, neither case is authority to sustain the majority's position.

The first case cited by the majority is *South Arkansas Feed Mills* v. *Roberts,* 234 Ark. 1035. The issue was whether Roberts was to be considered an employee of South Arkansas. In the case at bar the majority failed to point out that in the Feed Mill case, Roberts specifically agreed to the employment by the feed mill. There, this Court said: ''The relationship of employer and employee existed between South-Ark. and claimant when he was injured and had so existed for about eleven months theretofore. . . . The most reasonable interpretation of the evidence is that claimant was a special employee of South-Ark. at the time of his injury; 2. Shortly after claimant began work for South-Ark. he agreed to such employment.'' Furthermore, South Arkansas paid insurance premiums on Roberts.

The other case cited by the majority is *Ledbetter* v. *Adams*, 217 Ark. 329, 230 S. W. 2d 21. There, the Court held that the employee, Ledbetter, was, for compensation

purposes, still the employee of his original employer, Adams, although without Ledbetter's knowledge, Adams had sold the taxicab driven by Ledbetter to one Pike, who was the actual employer at the time Ledbetter was injured. The Ledbetter case and the authorities cited therein support the employee, Charles', position in the case at bar.

Mr. Jerry Thomasson, Referee for the Workmen's Compensation Commission, who had this claim before him in the first place, felt that compensation should be allowed. Mr. Thomasson stated: "In this case I feel the claimant was merely following directions of his employer when he went to work for the school district and therefore, no contract of hire was entered into between the school district and the claimant."

In my opinion, Mr. Thomasson was correct in his conclusion. I also think Charles is entitled to compensation for the loss of his finger, and I therefore respectfully dissent from the opinion of the majority.

I am authorized to say that Mr. Justice Johnson joins in this dissent.