Scipio JOHNSON *v.* BONDS FERTILIZER, INC.;
Bonds Brothers, Inc.; AGRI Group-Comp SI Fund;
CNA Insurance Company

08-269                                        289 S.W.3d 431

Supreme Court of Arkansas
Opinion delivered December 11, 2008

*Parker Law Firm*, by: *Tim S. Parker*, for appellant.

*Barber, McCaskill, Jones & Hale, P.A.*, by: *John S. Cherry, Jr.* and *Michael Lee Wright*, for appellees.

PAUL DANIELSON, Justice. In this third appeal of this matter, appellant Scipio Johnson appeals from the order of the Workers' Compensation Commission, which found that he was performing employment services for both appellee Bonds Fertilizer, Inc. and the Bonds Brothers Trust, also known as the Farm, at the time of his accident on June 28, 1995.[1] *See Johnson v. Bonds Fertilizer, Inc.*, 365 Ark. 133, 226 S.W.3d 753 (2006) (*Johnson II*); *Johnson v. Union Pac. R.R.*, 352 Ark. 534, 104 S.W.3d 745 (2003) (*Johnson I*). Mr. Johnson asserts four points on appeal: (1) that the Commission's finding that he was performing work for Bonds Fertilizer on the date of his injury was not supported by substantial evidence; (2) that the Administrative Law Judge (ALJ) and the Commission erroneously exceeded this court's mandate in *Johnson II*; (3) that the ALJ and the Commission erred by applying the doctrines of dual employment, loaned employee, simultaneous employment, and joint employment;

---

[1] In addition to Bonds Fertilizer, the following are also appellees, in accord with the pleadings filed before, and the decisions by, the Commission: Bonds Brothers, Inc., AGRI Group–Comp SI Fund, and CNA Insurance Company. For the sake of clarity, the appellees will be jointly referred to as Bonds unless it is necessary to distinguish the parties.

and (4) that the ALJ and the Commission erred in denying his motion to dismiss appellee Bonds Brothers, Inc., and in failing to strike its motions and briefs. We affirm the Commission's order.

As set forth in both *Johnson I* and *Johnson II*, this matter arises from an accident in which a train collided with a truck near Tamo, Arkansas, on June 28, 1995. Mr. Johnson was a passenger in the truck and was seriously injured when he was thrown from the vehicle upon impact. Mr. Johnson and his wife, Bessie Johnson, filed suit in the Jefferson County Circuit Court against Union Pacific Railroad, Bonds Fertilizer, Inc., and Bonds Brothers, Inc., alleging negligence and a loss of consortium. The circuit court granted summary judgment to both Bonds Fertilizer, Inc. and Bonds Brothers, Inc. and granted partial summary judgment to Union Pacific, on the issue of inadequate warning devices. Following a jury trial against Union Pacific on the remaining issue of negligence, the jury returned a verdict in favor of Union Pacific. Mr. Johnson appealed to this court, and we affirmed the grant of partial summary judgment to Union Pacific, but reversed the grant of summary judgment to Bonds Fertilizer,[2] remanding the matter to the circuit court with leave for Mr. Johnson to pursue a determination before the Commission as to whether he was performing employment services for Bonds Fertilizer or for the Farm on the date of the accident.[3] *See Johnson I, supra.*

Following our remand, Mr. Johnson sought a determination from the Commission; however, the ALJ and the Commission, in a 2-1 decision, agreed with the argument of Bonds Fertilizer and the Farm that since the statute of limitations had run, the Commission had no further jurisdiction in the matter and was without authority to issue an advisory opinion. *See Johnson II, supra.* On appeal, this court held that the Commission erred in both of its conclusions and reversed and remanded the matter to the Commission for a determination "as to whether Johnson was performing employment services for Bonds Fertilizer or the Farm on the date of the accident." 365 Ark. at 137, 226 S.W.3d at 756.

Since our remand in *Johnson II*, a hearing was held before the ALJ on July 21, 2006, and on January 10, 2007, the ALJ issued its

---

[2] Bonds Brothers, Inc. was not a party to the first appeal. *See Johnson I, supra.*

[3] This court's opinion further observed that it was not disputed that Mr. Johnson's injuries occurred while he was performing employment services. *See Johnson I, supra.*

order. In that order, the ALJ quoted the facts from our opinion in *Johnson I*, stating:[4]

> The record reflects that, on the date of the accident, Johnson was an employee of both the Farm and Bonds Fertilizer. Both companies, along with Bonds Brothers, were either owned or controlled by Kenny Bonds and Brian Bonds. Kenny and Brian each owned fifty percent of Bonds Brothers. Bonds Brothers is the sole shareholder of Bonds Fertilizer. The Farm is a partnership comprised of Kenny Bonds Farms, Brian A. Bonds Trust, and Bonds Brothers. When Johnson performed work for either the Farm or Bonds Fertilizer, he reported to the same supervisor, Allan Maxey. Some weeks, Johnson would perform tasks for both employers, but he would receive only one paycheck, from the company that he did the most work for that week. The week before the accident and the week of the accident, Johnson was paid by Bonds Fertilizer.
>
> On the morning of the accident, Johnson was performing work for the Farm, because one of the Farm's employees was out sick. That afternoon, Johnson was supposed to deliver a load of fertilizer that was coming in at 3:00 p.m. for Bonds Fertilizer. In the meantime, around 1:00 p.m., Maxey instructed Johnson to pick up a tractor for the Farm and begin laying irrigation pipe. Maxey instructed Johnson to ride with Frances Birmingham, an employee of Bonds Fertilizer. Alyston Luster, an employee of the Farm, also rode with them. The truck they were riding in was owned by Bonds Brothers, and it had a 1,000-gallon water tank hooked to the back.
>
> . . . .
>
> Following the accident, Kenny Bonds reported Johnson's accident to the insurance carrier for Bonds Fertilizer. The insurance carrier approved the claim and paid approximately $61,000 in medical and temporary total disability benefits to or on behalf of Johnson. Johnson accepted these benefits for over nine months, from July 1995 to April 1996. Subsequently, in February 1998, Johnson made a claim for additional benefits, listing as his employer:

---

[4] In his brief, Mr. Johnson acknowledges that this court's recitation of the facts in *Johnson I* "is correct and in accordance with the testimony of witnesses."

"Bonds Fertilizer, Inc. or Bonds Brothers Farms, Inc." That claim was later withdrawn by Johnson, in favor of the civil suit.

352 Ark. at 539-40, 104 S.W.3d at 746-47. In addition, the ALJ's order set forth the relationship between Bonds Brothers Trust, Bonds Brothers, Inc., and Bonds Fertilizer:

> In the deposition of Kenny Bonds, Jr., the relationship between the Bonds entities is explained. Bonds Brothers Trust is the operating partnership that runs the farm and was composed of Kenny Bonds, Kenny Bonds' Farm, Brian Bonds' Trust, and Bonds Brothers, Inc. It was commonly known as "The Farm." Bonds Brothers, Inc. is a corporation which is a partner in the Trust and owns the equipment and buildings leased and used by the Farm. Bonds Fertilizer, Inc. is a wholly owned subsidiary of Bonds Brothers, Inc. and operates a separate fertilizer business. Kenny Bonds, Jr. is the general partner of Bonds Brothers Trust, president of Bonds Brothers, Inc., and president of Bonds Fertilizer, Inc.

The ALJ determined that the preponderance of the evidence demonstrated that Mr. Johnson was paid by both Bonds Fertilizer and the Farm, "although he would get a check from only one of them for any particular pay period." The ALJ further determined, based on the evidence, that at the time of the accident, both Mr. Johnson and the driver of the truck were paid by Bonds Fertilizer and that Mr. Johnson was paid by Bonds Fertilizer both the week before and the week of the accident. Accordingly, the ALJ concluded, because Bonds Fertilizer paid Mr. Johnson and was not reimbursed, there was strong evidence that Bonds Fertilizer was Mr. Johnson's employer at the time of the accident.

The ALJ then discussed the doctrines of joint employment and dual employment, concluding that the credible evidence in the case "demonstrate[d] that Johnson was under the control of both employers at the same time when he was directed by his supervisor to ride with Birmingham to help retrieve a tractor on the Farm while waiting for the next load of fertilizer." In addition, the ALJ found that all three factors for dual employment were "plainly satisfied when the undisputed facts [were] examined."

In reviewing the loaned-employee doctrine, the ALJ noted that, even assuming Mr. Johnson was performing work for the Farm at the time of his accident, "there was no question but that he was loaned by Bonds Fertilizer to the Farm at that time." It further

found that it was clear from the evidence that Mr. Johnson "worked for both the fertilizer business and the farm on a regular basis and shifted from one to the other on an as-needed basis."

Finally, the ALJ considered the simultaneous-employment doctrine and concluded that

> Johnson was performing a duty for the common benefit of both the Farm and Bonds Fertilizer. He was traveling from one place of business to that of the other, as he was required to do in order to perform properly his assigned duties for the day — which included both fertilizer and farm work. Therefore, based on the credible evidence, I find that Johnson was the joint employee of both the Farm and Bonds Fertilizer and was performing employment services for the benefit of both employers at the time of the accident.

Accordingly, the ALJ's order set forth the following findings of fact and conclusions of law:

> 1. The Arkansas Workers' Compensation Commission has jurisdiction of this claim.
>
> 2. The preponderance of the evidence demonstrates that claimant was simultaneously employed by Bonds Brothers Trust a/k/a The Farm and Bonds Fertilizer, Inc. on June 28, 1995.
>
> 3. The preponderance of the evidence demonstrates that claimant was performing employment related services for both employers at the time of the accident on June 28, 1995.

Mr. Johnson appealed the ALJ's decision to the full Commission, which affirmed and adopted the decision of the ALJ, including all findings and conclusions, in a 2-1 decision. Mr. Johnson now appeals the Commission's decision.

## I. Substantial Evidence

For his first point on appeal, Mr. Johnson asserts that there was not substantial evidence to support the Commission's finding that he was performing work for Bonds Fertilizer at the time of the accident. Mr. Johnson avers that the evidence militated against the finding by the Commission and established that he was performing employment services solely for the Farm at the time of his injuries.

Bonds responds that Mr. Johnson was a dual employee for both Bonds Fertilizer and the Farm on the date of the accident. Nonetheless, Bonds avers, even if Mr. Johnson was an employee of

the Farm at the time, he was a loaned employee by Bonds Fertilizer to the Farm. In addition, Bonds asserts, Mr. Johnson was a simultaneous employee of Bonds Fertilizer and the Farm.

Our standard of review for decisions by the Commission is well established:

> On appeal, this court views the evidence and all reasonable inferences therefrom in the light most favorable to the Commission's decision and affirms that decision when it is supported by substantial evidence. It is for the Commission to determine where the preponderance of the evidence lies; upon appellate review, we consider the evidence in the light most favorable to the Commission's decision and uphold that decision if it is supported by substantial evidence. Substantial evidence is evidence that a reasonable mind might accept as adequate to support a conclusion. There may be substantial evidence to support the Commission's decision even though we might have reached a different conclusion if we had sat as the trier of fact or heard the case *de novo*. It is exclusively within the province of the Commission to determine the credibility and the weight to be accorded to each witness's testimony. We will not reverse the Commission's decision unless we are convinced that fair-minded persons with the same facts before them could not have reached the conclusions arrived at by the Commission.

*Arbaugh v. A G Processing, Inc.*, 360 Ark. 491, 493-94, 202 S.W.3d 519, 521 (2005) (internal citations omitted).

It is well settled that the ALJ's findings are irrelevant for purposes of appeal, as this court is required by precedent to review only the findings of the Commission and ignore those of the ALJ. *See Freeman v. Con-Agra Frozen Foods*, 344 Ark. 296, 40 S.W.3d 760 (2001). However, here, as in *Freeman*, we must review the findings of the ALJ because the Commission made absolutely no independent findings of its own; rather, it simply adopted each of the findings made by the ALJ. *See id.* In the instant case, the ALJ determined that Mr. Johnson was performing employment-related services for both Bonds Fertilizer and the Farm at the time of the accident. We, then, must determine whether that decision was supported by substantial evidence.

This court has previously acknowledged the doctrines of lent employees and dual employment, quoting from Larson's *Workmen's Compensation Law*:

§ 48.00 When a general employer lends an employee to a special employer, the special employer becomes liable for workmen's compensation only if

(a) The employee has made a contract for hire, express or implied, with the special employer;

(b) The work being done is essentially that of the special employer; and

(c) The special employer has the right to control the details of the work.

*South Arkansas Feed Mills, Inc. v. Roberts*, 234 Ark. 1035, 1038, 356 S.W.2d 645, 647 (1962) (quoting 1 Larson, *Workmen's Compensation Law* § 48.00, at 710)). In *Daniels v. Riley's Health & Fitness Centers*, 310 Ark. 756, 840 S.W.2d 177 (1992), we noted that the section further provided: "When all three of the above conditions are satisfied in relation to both employers, both employers are liable for workmen's compensation." 310 Ark. at 759, 840 S.W.2d at 178.

Here, the ALJ's order specifically found that all three factors for dual employment were satisfied, stating:

(a) at the time of the accident, Johnson worked for both Bonds Fertilizer and "the Farm."

(b) the work being done on the day of the accident was essentially that of the Farm, although by his own testimony Johnson was also working for Bonds Fertilizer.

(c) both Bonds Fertilizer and the Farm had the right to control the details of Johnson's work, depending on what Johnson was doing.

In *Cash v. Carter*, 312 Ark. 41, 847 S.W.2d 18 (1993), we examined whether the appellant was a loaned employee of appellee's construction company. In doing so, this court relied on the dual-employment doctrine, as set forth in *Daniels, supra,* and observed that the most significant question regarding a loaned employee is which company has direction and control of the employee. *See Cash, supra.* With respect to this doctrine, the ALJ found as follows:

It is undisputed that on the day of the accident, Johnson was taking the place of a sick employee of the Farm. It is likewise undisputed that before the accident, Johnson had returned from lunch and was waiting to haul a load of fertilizer for Bonds Fertilizer, when he was told by his supervisor that the load had been cancelled. Johnson was told that he would not have any fertilizer to haul until 3 p.m., and directed to go pick up a tractor with poly-pipe on it to put out at the Farm. Under these undisputed facts, Johnson was a "loaned" or "temporary" employee of the Farm at the time of the accident, and the same analysis applies as under the "dual employment" doctrine. *See Cash v. Carter*, 312 Ark. 41, 45-46, 847 S.W.2d 18 (1993).

▪ We hold that the Commission's decision was supported by substantial evidence. The evidence demonstrates that Mr. Johnson worked for both Bonds Fertilizer and the Farm and that on weeks in which he worked for both, he received only one paycheck from the company for which he did the most work. Both the week before the accident and the week of the accident, Bonds Fertilizer paid Mr. Johnson. On the morning in question, Mr. Johnson worked for the Farm, and that afternoon, at 3:00 p.m., he was to deliver a load of fertilizer for Bonds Fertilizer. However, at 1:00 p.m., his supervisor, who supervised his work for both Bonds Fertilizer and the Farm, directed Mr. Johnson to pick up a tractor for the Farm and to begin laying irrigation pipe. While riding with an employee of Bonds Fertilizer and an employee of the Farm, Mr. Johnson was injured when the truck in which he was riding was struck by a train. This evidence, viewed in the light most favorable to the Commission, was substantial evidence supporting the Commission's finding that Mr. Johnson was performing employment services for both Bonds Fertilizer and the Farm as a dual employee and a loaned employee. Accordingly, we affirm the Commission's decision.[5]

---

[5] Because we hold that there was substantial evidence to support the Commission's decision on the bases of both the dual-employment and loaned-employee doctrines, we need not reach the additional bases relied upon by the ALJ and affirmed by the Commission. We, therefore, offer no comment on the doctrines of joint employment or simultaneous employment.

In addition, we note that along with the arguments already set forth within this first point, Mr. Johnson further asserted within his substantial-evidence challenge that: (1) the representations of Kenny Bonds, Jr., President of Bonds Fertilizer, Inc., and Michelle Miller,

## II. Law of the Case

Mr. Johnson argues, for his second point on appeal, that the law-of-the-case doctrine barred the Commission from determining any issues other than for whom he was employed at the time of the accident. He contends that the ALJ and the Commission exceeded this court's mandate by examining the four doctrines of dual employment, joint employment, loaned employee, and simultaneous employment. Bonds counters that the ALJ merely conducted the necessary proceedings to answer this court's question and made its conclusions based upon a preponderance of the evidence, which the Commission then adopted.

Mr. Johnson's argument is without merit. We have long held that the trial court, upon remand, must execute the mandate. *See Wal-Mart Stores, Inc. v. Regions Bank Trust Dep't*, 356 Ark. 494, 156 S.W.3d 249 (2004). In *Wal-Mart*, we reviewed the history of the mandate rule, stating:

> The inferior court is bound by the judgment or decree as the law of the case, and must carry it into execution according to the mandate. The inferior court cannot vary it, or judicially examine it for any other purpose than execution. It can give no other or further relief as to any matter decided by the Supreme Court, even where there is error apparent; or in any manner intermeddle with it further than to execute the mandate, and settle such matters as have been remanded, not adjudicated, by the Supreme Court.

356 Ark. at 497, 156 S.W.3d at 252 (quoting *Fortenberry v. Frazier*, 5 Ark. 200, 202 (1843)). Citing to the Third Circuit Court of Appeals, we noted that the mandate rule "binds every court to honor rulings in the case by superior courts." *Id.* at 497-98, 156 S.W.3d at 252 (quoting *Casey v. Planned Parenthood*, 14 F.3d 848, 856 (3d Cir. 1994)). Accordingly, "[a] trial court must implement both the letter

---

its attorney, were binding pivotal admissions on the ultimate issue; (2) Bonds Fertilizer, Inc. was prohibited from now taking the position that Mr. Johnson was not performing work for the Farm at the time of his injuries under the doctrines of judicial estoppel and the doctrine against taking inconsistent positions; and (3) Bonds Fertilizer, Inc., the Farm, and Bonds Brothers, Inc. are separate and distinct legal entities. In *Johnson II*, we remanded the matter to the Commission solely to determine "whether Johnson was performing employment services for Bonds Fertilizer or the Farm on the date of the accident." 365 Ark. at 137, 226 S.W.3d at 756. A review of the ALJ's order reveals no specific rulings on these arguments. Therefore, we decline to address them.

and spirit of the mandate, taking into account the appellate court's opinion and the circumstances it embraces." *Id.* at 498, 156 S.W.3d at 252 (quoting *Casey, supra* (quoting *Bankers Trust Co. v. Bethlehem Steel Corp.,* 761 F.2d 943, 949 (3d Cir. 1985))).

Here, Mr. Johnson avers that the ALJ and the Commission somehow exceeded this court's mandate in *Johnson II.* In *Johnson II,* we specifically reversed and remanded the case "to the Commission to make a determination as to whether Johnson was performing employment services for Bonds Fertilizer or the Farm on the date of the accident." 365 Ark. at 137, 226 S.W.3d at 756. In turn, the record reflects that the Commission then remanded the matter to an ALJ "to conduct any and all necessary proceedings deemed appropriate to determine the employment relationship between the parties and to determine for whom the claimant was performing employment services at the time of his injury."

It is clear to this court that the Commission, as well as the ALJ, merely executed this court's mandate upon remand. Directions by an appellate court to the trial court, here, the Commission, as expressed by the opinion and mandate must be followed exactly and placed into execution. *See Dolphin v. Wilson,* 335 Ark. 113, 983 S.W.2d 113 (1998). Following *Johnson I,* the Commission did not consider whether Mr. Johnson was working for Bonds Fertilizer, Inc. or the Farm at the time of the accident. Instead, it declared that the statute of limitations had run and that it was without jurisdiction. In *Johnson II,* we specifically directed the Commission to determine for which employer Mr. Johnson was working at the time of the accident. It was, therefore, necessary for the Commission and the ALJ to consider the doctrines examined in making that determination, and they in no way exceeded our mandate. For these reasons, we affirm this point as well.

### III. Misapplication of the Doctrines

Relying on language in *Cash, supra,* Mr. Johnson urges that his activities for the Farm were separate from those for Bonds Fertilizer and that, on the day of the accident, his activities could be separately identified with the Farm. For that reason, he claims, none of the four doctrines examined by the ALJ were applicable to the facts of his case. Bonds urges that under the undisputed facts of the case, Mr. Johnson was a loaned or temporary employee of the Farm at the time of the accident.

In *Cash, supra,* quoting *Daniels, supra,* we said:

> Employment may also be "dual" in the sense that, while the employee is under contract of hire with two different employers, his activities on behalf of each employer are separate and can be identified with one employer or the other. When this separate identification can clearly be made, the particular employer whose work was being done at the time of injury will be held exclusively liable.

312 Ark. at 46, 847 S.W.2d at 20 (quoting *Daniels,* 310 Ark. at 759, 840 S.W.2d at 178)). In this case, the ALJ found that

> it [was] clear from the evidence that Johnson worked for both the fertilizer business and the farm on a regular basis and shifted from one to the other on an as-needed basis. . . . The instant case is clearly distinguishable from the cases in which the court has found that the claimant was an employee of two employers, but the work was separable.

Again, a review of the evidence in the light most favorable to the Commission, as already set forth above, reveals that there was substantial evidence to support the Commission's decision that Mr. Johnson's activities at the time of the accident were not separately identifiable for either employer. Mr. Johnson had the same supervisor for both jobs; was working for the Farm, but was also to work on fertilizer jobs that day; and was paid by Bonds Fertilizer for his work that week. Hence, we affirm the Commission on this point.

### IV. Denial of Motions to Dismiss and to Strike Briefs

For his final point on appeal, Mr. Johnson maintains that the Commission and the ALJ erroneously denied his motions to dismiss Bonds Brothers, Inc. and to strike its briefs. He contends that Bonds Brothers, Inc. had no interest in the litigation and that merely because it owned stock in Bonds Fertilizer, Inc. did not entitle it to appear as a party. Bonds maintains that the ALJ and the Commission acted within their discretion by denying Mr. Johnson's motions to ensure a full adjudication of all issues properly before the Commission.

Following the ALJ's order of January 10, 2007, but prior to its order of December 6, 2007, the Commission issued a separate order in which it denied Mr. Johnson's motions to dismiss and to strike. We hold that the Commission did not err in doing so.

■ In the affidavit of Kenny Bonds, which is a part of the record and was before the Commission, Mr. Bonds stated that

> Bonds Brothers, Inc. is the sole shareholder of Bonds Fertilizer, Inc. Bonds Brothers, Inc. owns all of the equipment, including vehicles, used by Bonds Fertilizer, Inc. and Bonds Brothers Trust. Bonds Brothers Trust, a partnership of Kenny M. Bonds, Jr., Bryan A. Bonds Trust, and Bonds Brothers, Inc., is the operating entity for the farming operation as required by Farm Service Agency.

Moreover, Mr. Johnson, at the time he originally filed his suit in Jefferson County Circuit Court, saw fit to bring suit against Bonds Brothers, Inc., as well as Bonds Fertilizer. Following Mr. Johnson's appeal of the circuit court's order in *Johnson I*, we determined that the Commission had exclusive, original jurisdiction to determine whether Mr. Johnson's injuries were covered by the Workers' Compensation Act and that for which employer Mr. Johnson was working at the time of the accident was an issue of fact for the Commission to resolve. To resolve that issue of fact, the Commission determined that the participation of Bonds Brothers, Inc. was necessary as Bonds Brothers, Inc. "[was] and continue[d] to be a necessary party" in the matter. We, therefore, cannot say that the Commission's decision was erroneous. Accordingly, we affirm the Commission on this point as well.

Affirmed.